UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
Oct 15   1 03 PM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| ROBERT E. MARTIN, Jr., Plaintiff | NO.: 3:02-CV-1395 (MRK) |
| v. | |
| TOWN OF WESTPORT AND STEPHEN EDWARDS, Defendants | OCTOBER 13, 2003 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants, Town of Westport and Stephen Edwards, hereby submit this reply memorandum of law in support of their motion for summary judgment dated July 31, 2003. The plaintiff's objection is dated September 30, 2003. A review of the plaintiff's objection indicates that the plaintiff does not oppose the dismissal of some of his claims. First, the plaintiff has set forth no argument in opposition to the dismissal of his claims against Stephen Edwards pursuant to Title VII, the Americans with Disabilities Act ("ADA"), and Conn. Gen. Stat. § 46a-60(a)(1), on the ground that these statutes do not provide for individual liability. Second, the plaintiff does not contest that General Statutes §§46a-69, 46a-70 and 46a-71 are inapplicable as these statutes prohibit discriminatory practices by *state agencies* only. Third, the plaintiff does not contest that his claim of gender discrimination must fail as a matter of law.

The plaintiff has also failed to address the statute of limitations and governmental immunity defenses to the CFEPA and common law tort claims.

A.  **The Defendants Are Entitled To Summary Judgment As To The Plaintiff's Disparate Treatment Claim Of Race Or Color Discrimination.**

The plaintiff premises his race discrimination claim on the treatment he received with regards to his injury. His position, however, is inconsistent, and his *evidence* is insufficient to defeat summary judgment.

First, in order to establish a *prima facie* case of race discrimination, the plaintiff must prove that he was treated differently than similarly situated Caucasian employees. The plaintiff has failed to submit any evidence to support this position. The fact that John Gudzik and Jospeh Bottone were permitted to return to work does not show differential treatment. Unlike Mr. Martin in May 2001, both Mr. Gudzik and Mr. Bottone were able to return to work without any restrictions. See **Exhibit A**. ¶¶25, 27. The plaintiff concedes that Mr. Gudzik and Mr. Bottone returned to their regular job duties upon their return to work. See Plaintiff's Memorandum, pp. 4, 6. When Mr. Martin provided medical documentation clearing him to return to work without restriction, he was likewise permitted to return. As such, there is no evidence of differential treatment.

Having failed to establish a *prima facie* case of discrimination, the plaintiff has not satisfied his burden under *McDonnel Douglas*. Thus, the query ends without the necessity of the defendants offering a legitimate non-discriminatory reason for their actions. Assuming however that the plaintiff could establish a *prima facie* case of discrimination, his claim must fail because the defendants did have a legitimate reason for their actions and the plaintiff has failed to present *evidence* of pretext.

In his opposition brief, the plaintiff argues that the proffered explanation for the defendants' actions must be pretextual given the defendants' admission that "[t]he plaintiff's impairment did not limit his ability to perform manual tasks, walk, see, hear, speak, breathe, learn, care for himself or work." In making this argument, the plaintiff mistakenly assumes that the defendants have conceded that the plaintiff could perform the essential functions of his position as of May 1, 2001. On the contrary, the defendant concedes only that the plaintiff did not have a "disability" as defined under the ADA because he was not substantially limited in a *major life activity*. The defendant determined that the plaintiff was unable to perform the essential functions of his position based on the plaintiff's doctor's correspondence and limitations placed on Mr. Martin. The plaintiff does not dispute that his doctor had placed him on lifting restrictions. The plaintiff has not submitted any evidence to refute that there were no longer any light duty assignments available for the plaintiff within the equipment maintenance division, as set forth in Mr. Edwards' affidavit. And the plaintiff has not submitted any evidence that the defendants' actions were racially motivated. The plaintiff concedes that neither Edwards nor any of the plaintiff's other supervisors made any racially derogatory comments or jokes. See **Exhibit C**, pp. 120, 124-130, 133.

**B.     The Plaintiff Was Not Denied His Right To Due Process Under The Fourteenth Amendment.**

Post-deprivation grievance procedures that provide for a hearing to contest a challenged employment decision satisfy the due process requirement. See Harhay v. Town of Ellington, No. 01-9173 (2nd Cir. 2003); Narumanchi v. Board of Trustees of

3

Conn. St. Univ., 850 F.2d 70 (2nd Cir. 1988); see also, Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002); Tedesco v. Stamford, 222 Conn. 233, 244 (1992). In this case, the grievance procedure set forth in the collective bargaining agreement provided the plaintiff all the process that he was due as a matter of law.

The plaintiff argues that the grievance procedure failed to provide him with due process because the first step of the procedure required the plaintiff to go to the alleged wrongdoer. The plaintiff has failed to cite any authority to support his position. Moreover, the plaintiff fails to acknowledge that he proceeded all the way to arbitration. As such, the decision of the first select person at step one did not deprive the plaintiff of a fair post-deprivation hearing.

The plaintiff seems to claim for the first time that his Fourteenth Amendment claim also encompasses an equal protection component. An equal protection claim was not set forth in the complaint and should not be considered. To the extent the Court considers an equal protection claim, the defendant submits that the claim should fail for the same reasons as the Title VII claim. The plaintiff has submitted no evidence of unequal treatment or malicious intent on the part of the defendants.

**C.     The Defendants Are Entitled To Summary Judgment As To The Plaintiff's Hostile Work Environment Claim.**

The plaintiff argues that Mr. Martin Jr.'s differential treatment was frequent and severe," but he fails to cite any instances of alleged differential treatment aside from the actions taken on May 1, 2001. As such, the treatment could not be frequent or severe! The plaintiff submits that the Town was aware of abusive, hostile and differential

treatment by other employees, but the plaintiff identified only one comment as evidence of racial discrimination. That comment was purportedly made on February 26, 2003 by Joe Izzo, a co-worker, and was not reported. See **Exhibit C**, pp. 124-131. As such, there is no basis for imputing liability to the Town of Westport. Absent evidence of racial remarks or abuse, the plaintiff cannot establish a hostile work environment claim.

Further, the defendant notes that the plaintiff was advised via letter that there would not be any light duty work available for him as of May 1, 2001. Accordingly, any humiliation the plaintiff may have experienced on May 1, 2001 when he showed up for work without medical clearance was self-induced. The defendant also submits that the actions taken by the defendants were reasonable.

### D. Stephen Edwards Is Entitled To Qualified Immunity As To The Plaintiff's 42 U.S.C. §1983 Due Process Claim.

#### 1. Substantive Due Process

The defendants object to the Court's consideration of any alleged substantive due process claim. The plaintiff did not plead such a claim in his lawsuit and should not now be allowed to raise the issue for the first time in his opposition to summary judgment. Regardless, however, the claim should fail.

Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights that are guaranteed elsewhere. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427 (1985); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999). The Supreme Court has been reluctant to expand the scope of substantive due process. See Albright v. Oliver, 510 U.S. 266,

271-72; 114 S.Ct. 807, 812 (1994). Substantive due process protection has been limited to rights that are "fundamental" and implicit in the concept of ordered liberty, such as marriage, family, procreation, and the right to bodily integrity. See id. at 272; Palko v. Connecticut, 302 U.S. 319, 325 (1937); Skinner v. City of Miami, Florida, 62 F.3d 344, 347 (11th Cir. 1995). In a due process challenge to abusive conduct by a state actor, the court must determine "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708 (1998). Here, the alleged conduct is not so egregious as to shock the conscience.

Moreover, the alleged deprivation is subject to procedural due process protection and should be analyzed under that standard, not the more generalized substantive component of the due process clause. See Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 812 (1994). In Albright, the Supreme Court held that:

> [w]hen a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.

Id, at 272. In this case, the plaintiff incorporates the same allegations used to support his procedural due process claim in an attempt to create a compensable claim under the notion of substantive due process. Pursuant to Albright, the claim must fail.

**2.    Procedural Due Process**

As set forth in the defendants' prior memorandum of law, Stephen Edwards is entitled to qualified immunity because he did not deprive the plaintiff of a protected

6

property interest. Edwards did not have the authority to terminate the plaintiff's employment. See **Exhibit A**, ¶¶21, 22; and **Exhibit H**. Moreover, the grievance procedure afforded the plaintiff all the process he was due.

In addition, the plaintiff has set forth no evidence to support his claim that Edwards deprived him of his reputation. The plaintiff does not allege, let alone offer evidence, that Edwards charged the plaintiff with dishonesty or immorality, or some other charge that would place his good name or reputation at stake. The plaintiff was certainly not foreclosed from employment opportunities as a result of Edwards' actions; he continues to work for the Town of Westport. Accordingly, the plaintiff's claim must fail. See Board of Regents v. Roth, 408 U.S. 564, 573-75, 92 S.Ct. 2701 (1972). Furthermore, to the extent there was a charge that would affect the plaintiff's reputation, he was given an opportunity to refute those charges through the grievance procedure.

Additionally, Edwards is entitled to qualified immunity because his actions did not violate any of the plaintiff's *clearly established* constitutional or statutory rights. The Second Circuit has previously held that a post-deprivation grievance procedure affords adequate due process protection. See Narumanchi, 850 F.2d at 72.

E.   **The Defendants Are Entitled To Summary Judgment As To The Plaintiff's Retaliation Claim.**

The plaintiff's argument that there is a causal connection between the filing of his most recent CHRO complaint and the alleged termination is disingenuous and frivolous. The plaintiff was advised on April 13, 2001 that there would no longer be light duty work available for him as of May 1, 2001. On May 1, 2001, the plaintiff was then advised to

7

turn in his keys because he had yet to be cleared to return to work without restriction. The plaintiff filed his complaint with the CHRO *after* these events. As such, the plaintiff cannot establish a *prima facie* case of retaliation as a matter of law.

**F.    The Defendants Are Entitled To Summary Judgment As To The Plaintiff's Claim Of Disability Discrimination.**

The plaintiff cannot establish a *prima facie* case of discrimination under the ADA because there is no evidence that the plaintiff's alleged impairment substantially limited a major life activity! The plaintiff has not identified a major life activity, nor has he provided any evidence to show that he was substantially limited in that activity. As such, the plaintiff has failed to show that he has a "disability" as defined under the Act.

In addition, the plaintiff was unable to perform the essential functions of his position as set forth in his job description and confirmed by his supervisor, Stephen Edwards. The plaintiff's physician indicated that the plaintiff had lifting restrictions of less than ten pounds and that he could not perform the functions of the equipment mechanic for which he was responsible. The plaintiff does not create an issue of material fact by introducing testimony of coworkers that they did not observe limitations on the plaintiff's ability to perform the essential functions of his position. First, there is no evidence to show that these coworkers knew the essential functions of the plaintiff's position. Second, there is no evidence to show that these coworkers had an ample opportunity to view the plaintiff's work. Third, the coworkers' observations are simply irrelevant when the defendants relied not on observations but on the plaintiff's own doctor's correspondence and restrictions indicating that the plaintiff could not perform

the essential functions of his position. As late as May 31, 2001, Dr. Gross indicated that he did not believe that the plaintiff could perform the manual and stressful activities required of the equipment mechanic. See **Exhibit D**, p. 57; and **Exhibit F**.

**G.    The Plaintiff Cannot Establish A Claim Of Intentional Infliction of Emotional Distress As A Matter Of Law.**

Allegations of intentional discrimination cannot defeat summary judgment unless the outward conduct is itself outrageous or extreme. See Campbell v. Town of Plymouth, 74 Conn. App. 67, 79 (2002); Armstead v. Stop & Shop Co., Inc., No. 3:01cv1489 (JBA) (D. Conn. 2003). There is no evidence of such conduct in this case.

The allegations in Armstead are remarkably similar to those in this case. In Armstead, the plaintiff alleged that the defendant "refused to accommodate [his] restrictions although similar accommodations had been made for other employees, and would not permit plaintiff to return to work unless completely recovered." The District Court held that the alleged manifesting conduct itself was not extreme and outrageous, and granted the defendant's motion to dismiss. Id.

In this case, the plaintiff alleges that the defendants failed to accommodate his medical restrictions and terminated his employment, although accommodations were made for Caucasian employees. As in Armstead, the manifesting conduct is not outrageous or extreme. In his opposition brief, the plaintiff claims that the defendants made disparaging racial and personal remarks, but the plaintiff has at no time throughout these proceedings identified those remarks. The plaintiff cannot defeat summary judgment by submitting an affidavit attesting to harassment and inappropriate

9

personal remarks when he has failed to identify any specifics. On the contrary, the plaintiff testified that neither Edwards, nor any of his other supervisors made any racially derogatory comments or jokes. See **Exhibit C**, pp. 120, 124-130, 133.

**H.     The Plaintiff Cannot Maintain An Action For Negligent Infliction Of Emotional Distress As A Matter Of Law.**

The plaintiff's negligent infliction of emotional distress claim must fail as a matter of law for two reasons. First, the plaintiff's employment was not terminated. See Perodeau v. Hartford, 259 Conn. 729, 792 A.2d 752 (2002). Second, the defendants did not act unreasonably in the alleged termination process. The plaintiff has submitted no evidence that the defendants' conduct was more humiliating or embarrassing than that associated with any other involuntary termination. Moreover, Edwards advised the plaintiff via letter that the Town would no longer have any work available as of May 1, 2001 unless the plaintiff's doctor authorized the plaintiff's return to work without restrictions. See Plaintiff's Complaint, ¶23; and **Exhibit A**, ¶16. As such, any distress incurred by the plaintiff on May 1, 2001 was self-induced. He ignored his supervisor's prior instruction that he needed medical clearance before returning to work.

**I.     Inadmissibility Of "Evidence"**

In support of his opposition brief, he plaintiff submits an affidavit that contains inadmissible hearsay. The plaintiff does not have first-hand knowledge of the work duties and responsibilities of his co-workers. Further, the affidavit contains numerous legal conclusions. As such, the affidavit is improper and should not be considered.

Exhibit 8 is likewise inadmissible as it contains documents pertaining to the plaintiff's application for unemployment.

## J.     Conclusion

For the reasons set forth above and in the defendants' prior memorandum of law, the defendants, Town of Westport and Stephen Edwards, respectfully request that their motion for summary judgment be granted as to all counts.

DEFENDANTS,
TOWN OF WESTPORT AND
STEPHEN EDWARDS

By /s/ Alexandria L. Voccio
Alexandria L. Voccio
ct21792
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (fax)
E-Mail: avoccio@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 13th day of October, 2003.

Ikechukwu Umeugo, Esquire
Umeugo & Associates, P.C.
840 Orange Avenue
P.O. Box 26373
West Haven, CT  06516

*Alexandria L. Voccio*
Alexandria L. Voccio
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361