UNITED STATES COURT

DISTRICT OF CONNECTICUT

..................................................

| | | |
|---|---|---|
| ROBERT E. MARTIN, JR. | : | CIVIL ACTION NO. |
| PLAINTIFF, | : | 3:02CV1395(MRK) |
| V. | : | |
| TOWN OF WESTPORT, ET AL | : | |
| DEFENDANTS | : | OCTOBER 1, 2004 |

..................................................:

### JOINT TRIAL MEMORANDUM

Pursuant to court order the parties hereby submit the following joint trial memorandum.

**1 - Trial Counsel:**

(a) Plaintiff —   Ikechukwu Umeugo
Umeugo & Associates, P.C.
620 Boston Post Road
P.O. Box 26373
West Haven, Connecticut 06516
Telephone No. (203) 931-2680
Fax No. (203) 931-2682

(b) Defendant —   Michael J. Rose
Howd & Ludorf
65 Wethersfield Avenue
Hartford, Connecticut 06114
Telephone No. (860) 249-1361
Fax No. (860) 241-8974
Email: mrose@hl-law.com

## 2 – JURISDICTION:

Jurisdiction is founded on federal question; particularly Title VII, the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, and 28 U.S.C., Sec. 1343, and 28 U.S.C., Sec. 1331, and CFEPA (Connecticut Fair Employment Practices Act), Conn. Gen. Stat. §§ 46a-60 *et seq.*

## 3 – JURY/NON-JURY

Demand for trial by Jury was made in plaintiff's complaint dated August 8, 2002.

This case is to be tried to a jury under the authority of the amendments to the Civil Rights Act of 1991.

## 4 – LENGTH OF TRIAL

The expected length of trial is a week.

## 5 – FURTHER PROCEEDINGS:

The parties believe that approximately 8 motions *in limine* will need to be addressed prior to the initiation of evidence.

## 6 – NATURE OF CASE:

### Plaintiff

The present action arose on May 1, 2001, when the plaintiff's employment was terminated and/or when he was forbidden to work while he was on worker's compensation and/or pursuing workers' compensation claim and under medical doctors case due to work-related injuries. Mr. Martin alleges in his complaint that the defendant through its agents and employees discriminated against him because of plaintiff's race and color. Mr. Martin alleges and here provided several examples of white employees who were allegedly treated favorably

2

than he was after they were injured. In other words, this is a Title VII and CFEPA claims for disparate treatment and racial discrimination claim against the defendant Town of Westport.

**Defendant**

This case involves a claim of race discrimination filed by Robert Martin. This is Mr. Martin's second jury trial claiming race discrimination. In this particular case, Mr. Martin claims that he was placed on unpaid medical leave because he was African-American. The Defendants maintain that Mr. Martin was placed on medical leave because his purported arm injury did not, according to his own physicians, allow him to perform his job duties.

## 7 – **TRIAL BY MAGISTRATE JUDGE:**

The parties do not want trial by a magistrate Judge.

## 8 – **EVIDENCE:**

**List of plaintiff's proposed witnesses:**

- Mr. Robert E. Martin, Jr., 207 Denver Avenue, Bridgeport, CT 06606

Mr. Martin will testify concerning his employment history, his job duties, the job duties of various individuals within the Town of Westport, the defendant forbade him to work and/or terminated his employment on May 1, 2001, due to his race, color and status as an African-American, while other similarly situated co-workers who were white were treated more favorably than he was after they were injured. Mr. Martin will testify as to his claimed damages as a result of same.

- Mr. John Harayada, Town Hall, Westport, CT 06880

Mr. Harayda will testify concerning his duties, his interaction with Mr. Martin as a co-

3

      A. Correspondence dated May 31, 2001 from Dr. Gross

      B. Office Note dated September 20, 2001 (Dr. Gross)

      C. Office Note dated October 12, 2001 (Dr. Gross)

      D. Office Note dated August 9, 2001 (Dr. Gross)

      E. Office Note dated February 15, 2001 (Dr. Gross)

      F. Office Note dated February 22, 2001 (Dr. Gross)

      G. Office Note dated December 13, 2000 (Dr. Gross)

      H. Office Note dated December 14, 2000 (Dr. Gross)

      I. Office Note dated December 21, 2000 (Dr. Gross)

2. Department of Public Works, Equipment Maintenance Division, Master Mechanic Job Description.

3. Department of Public Works, Equipment Maintenance Division, Equipment Mechanic Job Description

4. Letter from Steven Edwards to Robert Martin dated April 13, 2001.

5. Collective Bargaining Agreement, (July 1, 1999 to June 30, 2004).

6. Westport Code, Section C4-5 (3-20-2001) (Town Charter).

7. Medical Records Robert Martin, Jr.

      A. Office Note dated January 5, 2001 (Dr. Michael Brennan)

      B. Questionnaire completed by plaintiff (undated).

      C. Office Note dated November 30, 2000 (Dr. Michael Brennan)

      D. Office Note dated October 12, 2000 (Dr. Michael Brennan)

      E. Questionnaire completed by plaintiff (undated).

    F. Questionnaire completed by plaintiff (October 12, 2000).

    G. Office Note dated July 27, 2000.

    H Office Note dated July 11, 2000.

    I. Office Note dated June 29, 2000.

    J. Office Note (and assessment) dated May 15, 2000.

    K. Office Note dated April 17, 2000.

    L. Office Note dated May 1, 2000

    M. Office Note dated April 17, 2000

    N. Report from Dr. Bruce Sprague, dated January 29, 2001.

    O. Hand Surgery of Connecticut, February 15, 2001.

8. Letter dated May 29, 2001 from Mr. Hamilton re: disability pension.

9. Letter dated May 31, 2001 from Tom Hamilton.

10. May 23, 2001 Grievance/Denial by Diane Farrell.

**List of Depositions that the plaintiff proposes to use:**

- Plaintiff Robert E. Martin, Jr.'s deposition transcript dated February 28, 2003

- Workers' Compensation Hearing transcript of the testimonies of the following witnesses: Robert E. Martin, Jr., Joseph Battone, John Gudzik, and John Harayda, dated January 28, 2002, March 13, 2002 and September 13, 2002.

\* The plaintiff reserves the right to use any of the defendant's listed exhibits as his own exhibits.

**List of depositions that defendant proposes to use.**

- Robert E. Martin, Jr.'s deposition transcript dated February 28, 2003.

8

## 9 - THE PARTIES STIPULATION OF UNCONTROVERTED FACTS THAT WILL BE READ TO THE JURY:

### Plaintiff:

Mr. Martin is an African-American male employed by the Town of Westport (the "Town") in its Equipment Maintenance Division. That division falls under the aegis of the Town's Public Works Department of which Mr. Edwards is the Director. Mr. Martin is, and at all relevant times was, the Master Mechanic, which is the Lead Mechanic in the Equipment Maintenance Division, and is responsible for, among other things, leading, instructing, and assisting all Equipment Mechanics in all phases of the work, assigning work, writing up job tickets, maintaining records, maintaining work schedules, and assisting in the requisitioning of parts and supplies.

On or about December 20, 1999, Mr. Martin injured his right shoulder and wrist while working for the Town. He underwent surgery on his elbow and wrist on February 14, 2000, and spent time out of work recuperating until about August 2000. In August 2000, Mr. Martin returned to work but his treating physician, Dr. Stewart C. Gross, limited Mr. Martin to light duty, not to exceed four hours a day, with no lifting.

On December 14, 2000, Mr. Martin re-injured his right arm while at home clearing snow from his vehicle, and he remained out of work until February 20, 2001. On February 20, 2001, Mr. Martin again returned to light duty for four hours a day, but increased to eight-hour days of light duty beginning February 22, 2001. Mr. Martin's light duty assignment restricted any required lifting of less than ten pounds. On April, 13, 2001, after meeting with Mr. Martin and his union representatives, Mr. Edwards advised Mr. Martin by letter that: "as of the end of

April we will only have work for you if your doctor authorizes your return to your regular position as Mater Mechanic, full time without restrictions, and you do, in fact, return to work."

When Mr. Martin reported to work on May 1, 2001, he was forbidden from working and was ordered to turn in his keys. However, Mr. Martin continued to receive health benefits and all other benefits in accordance with the contract between the union and the Town. He eventually returned to work and was restored to the payroll on or about October 15, 2001, after an independent medical examiner declared him fit to resume his job.

On or about May 1, 2001, Mr. Martin filed a complaint with the CHRO alleging that he had been terminated and harassed on the basis of his race. He received a release of jurisdiction on May 20, 2002, and filed this lawsuit on August 12, 2002.

**Defendant:**

1.    The plaintiff is an African-American male employed by the Town of Westport in the equipment maintenance division.

2.    The equipment maintenance division falls under the umbrella of the Public Works Department.

3.    There are only two mechanics in the equipment maintenance division, an equipment mechanic and the master mechanic.

4.    The plaintiff, Robert Martin, is, and was at all times relevant to the complaint, the master mechanic.

5.    The master mechanic position is not a supervisory position.

6.    The master mechanic must be physically able to perform all of the duties of the

equipment mechanic position.

7. Lifting items greater than 50 pounds is an essential function of both the master mechanic and equipment mechanic positions.

8. Historically, the plaintiff has had to lift more than three pounds as a master mechanic.

9. Defendant Edwards is employed by the Town of Westport as the Director of the Department of Public Works.

10. On December 20, 1999, the plaintiff injured his right shoulder and wrist.

11. The plaintiff underwent surgery to his elbow and wrist on February 14, 2000.

12. Following the surgery, the plaintiff underwent a healing process. He remained out of work until August, 2000.

13. In August 2000, the plaintiff's treating physician limited the plaintiff to four-hour days, light duty and no lifting.

14. In an effort to provide a light duty assignment, Mr. Edwards arranged for Mr. Martin to complete extensive paper work that had accumulated during Mr. Martin's absence. In addition, Mr. Martin was responsible for ordering parts and working on inventory.

15. On December 13, 2000, while still on light duty, the plaintiff met with his treating physician and was informed that he had reached maximum medical improvement.

16. On December 14, 2000, the plaintiff re-injured his right arm while at home clearing snow from his vehicle, and remained out of work until February 20, 2001.

17. On February 20th, the plaintiff again returned to light duty for four hour days, but increased to eight hour days on February 22, 2001.

11

18.   The plaintiff's light duty assignment included lifting restrictions of less than ten pounds.

19.   On April 13, 2001, after meeting with the plaintiff and his union representatives, the defendant, Stephen Edwards, advised the plaintiff via letter of the following: "as of the end of April we will only have work for you if your doctor authorizes your return to your regular position as master mechanic, full time without restrictions, and you do, in fact, return to work."

20.   As of May 1, 2001, the plaintiff had failed to provide the Town of Westport with a note from his physician indicating that he could return to full time work without restrictions.

21.   As of May 1, 2001, Mr. Martin had exhausted the light duty work available. There was no other light duty assignment available for Mr. Martin within the equipment maintenance division.

22.   Accordingly, on May 1, 2001, Mr. Martin was not allowed to work.

23.   Mr. Martin continued to receive health benefits and all other benefits as provided by the union contract after May 1, 2001.

24.   Mr. Martin's employment was not terminated.

25.   Mr. Edwards does not, and did not, have the authority to terminate an individual's employment with the Town of Westport.

26.   Given the restrictions Mr. Martin's physician placed on him, Mr. Martin could not perform the essential functions of the master mechanic position.

27.   As late as May 31, 2001, the plaintiff's own physician, Dr. Gross, indicated

that he did not believe that the plaintiff could perform the manual and stressful activities required of the equipment mechanic.

28. As a result of his arm injury, Mr. Martin was out of work for a total of nine and one-half months. He received light duty assignments for six and one-half months.

29. John Gudzick works in the highway division. Mr. Gudzick injured his right eye in 1983, and was left with a sight vision impairment in that eye. When Mr. Gudzick was able to return to work, he returned to work without restrictions. He was not provided any light duty assignment.

30. Michael Frawley is the Building Maintenance Mechanic. In September 1994, while working as a building maintenance mechanic, Mr. Frawley broke his ankle in a non work-related injury. He was out of work for several weeks. Mr. Frawley was released for a light duty assignment on October 6, 1994, and was returned to unrestricted work on November 10, 1994.

31. Joe Battone is an equipment operator. He had knee surgery on March 27, 1997 as the result of a work-related injury. He was out of work for 5 weeks. Upon his return to work, Mr. Battone was able to work without restrictions.

32. Dale Wehmhoff is an equipment operator. He injured his knee on February 10, 1997 and underwent knee surgery on March 12, 1997. He returned to unrestricted work on May 23, 1997, 15 weeks after incurring the injury.

33. Dougie Meyers is a building maintenance mechanic. As the result of a back injury, he has a lifting restriction of 40 pounds. He has been accommodated on a light duty assignment covering for a sick custodian for ten months.

13

34. Mr. Meyers' light duty assignment will be terminated when the department returns to full custodial staff.

35. There are nine more employees in the building maintenance division, including the custodial staff, than are in the equipment division. The different functions performed by the maintenance division provide greater opportunities for a long-term, light duty assignment than in the 2-person equipment maintenance division.

36. The plaintiff's physician advised the plaintiff that the amount he would be able to lift would improve over time, and it has in fact improved.

37. The plaintiff was cleared to return to work in October 2000.

38. The plaintiff is now able to lift 25 pounds with his right arm.

39. The plaintiff had no other limitation other than the lifting restriction.

40. The only activity that remains limited by the plaintiff's arm injury is the recreational activity of bowling.

41. The plaintiff is a beneficiary of a Collective Bargaining Agreement.

42. Pursuant to said Agreement, the plaintiff filed a grievance claiming wrongful termination and discrimination.

43. The grievance was filed directly with the First Selectperson, and was denied. The grievance then proceeded to arbitration.

44. The Connecticut State Board of Mediation and Arbitration ruled in the Town's favor, finding that the plaintiff's employment was not terminated.

45. Pursuant to the Town Charter, only the First Selectperson was authorized to terminate an individual's employment with the Town.

14

46. The plaintiff is not aware of any of his supervisors ever making any racially derogatory comments or jokes.

47. Mr. Edwards has never made any race based comments.

48. The Town of Westport has a policy against discrimination that provides a complaint procedure for employees.

49. The only comment offered by the plaintiff as evidence of racial discrimination is that on February 26, 2003, Joe Izzo, a co-worker, used the word "coon."

50. The plaintiff was aware of the Town of Westport's anti-discrimination policy.

51. The plaintiff did not report Mr. Izzo's comment pursuant to the Town's anti-discrimination policy.

52  The plaintiff filed a complaint with the Commission on Human Rights and Opportunities in 1997, alleging race and color discrimination. The filing of said complaint occurred four years prior to the events of May 1, 2001.

## 10 - PROPOSED VOIR DIRE QUESTIONS

### Plaintiff's Proposed Voir Dire Questions:

The plaintiff requests that each of the prospective jurors identify themselves, their telephone number, their name(s), their current address, their occupation, and occupation of their spouses. The plaintiff requests that the said prospective jurors should be asked the following questions:

1. Do any of you feel, for any reason, that you could not fairly decide this case?
2. Have you or any members of your family or friends ever worked for any city, town, federal government or any related agency?

15

3. Have you served as a juror in any case before _____? If so, where, when and what type of case (civil or criminal)?

4. Are you or any members of your family related to any of the parties to this action or the lawyers representing them?

5. Do you know any of the lawyers in this action?

6. Do you know any thing about this lawyer?

7. Do you know any of the witnesses that are going to testify in this case?

8. Do you have any particular feelings concerning people who brings lawsuit or pursue claims because of discrimination or civil rights violation?

9. Do you have any particular feelings concerning people who bring lawsuit or pursue claims against the city or town?

10. Have you filed a lawsuit or brought a claim for money damages? If so:

    (a)   What was the nature of the lawsuit?

    (b)   How was the lawsuit resolved?

11. Are you able to follow the judge's instruction on what you have to do or consider in deciding this case?

12. Do you feel that the town or city and it's employees cannot do something wrong?

13. Once the plaintiff proves his case, do you have any problem awarding him reasonable, fair and just damages or monetary award?

14. Are you the type of person that is willing to hear both sides before making a decision?

15. Do you consider yourself as a reasonable, fair and just person?

16. Do you consider yourself as a person who has common sense?

17. Would you be willing to apply your common sense in making this decision?

18. Have you or any members of your family worked for the town of Westport or any other municipality?

19. Have you suffered from any type of discrimination? If so, where, when and what type?

20. Would you like to serve as a juror in this case?

21. Do you have any preconceived ideas or predisposition as to the limit of monetary damages in such cases?

**Defendants Proposed Voir Dire Questions**

1. The plaintiff in this case is Robert E. Martin, Jr. of Trumbull, Connecticut. To the best of your knowledge, are you or any member of your family acquainted with the plaintiff in any way?

2. The defendant in this case is the Town of Westport. To the best of your knowledge, are you or any member of your family acquainted with the defendant?

3. The following individuals may be witnesses in this case:

   (a) Steven Edwards

   (b) Diane Farrell, First Selectwoman

   (c) Tom Hamilton, Director of Personnel

To the best of your knowledge, are you or any member of your family acquainted with these individuals?

4. Specifically, are you aware of the fact that Diane Farrell is currently running for the U.S. Congress?

17

5. If so, do you have any preconceived notions about her as a candidate?

6. To the best of your knowledge, have you, a member of your family or a close friend ever had an unpleasant experience with an employer?

7. Do any of you have an unfavorable opinion about employers?

8. To the best of your knowledge, have you, a member of your family or a close friend ever had an unpleasant experience with the Town of Westport or any of its subdivisions, agencies, officers, or employees?

9. Do any of you have an unfavorable opinion about the Town of Westport or any of its subdivisions, agencies, officers, or employees?

10. Have you, a member of your family, or a close friend ever been terminated, disciplined or laid off from employment?

11. Have you, a member of your family, or a close friend ever made a claim of racial discrimination against an employer?

12. Have you ever been a party to a lawsuit?

13. Have you, a member of your family, or a close friend ever sued the Town of Westport, any municipality, the State of Connecticut or any State for any reason?

14. Have you or a member of your family ever been sued by the Town of Westport, a municipality, the State of Connecticut or another governmental agency for any reason?

15. If you are selected to sit on this jury, the Court will instruct you on the law which you must apply to the facts of this case as you find them to be. One of the Court's instructions will inform you that the burden of proof for all material facts rests with the plaintiff. Do you understand that it is the plaintiff's responsibility to prove every fact essential to his case?

## 11 - PROPOSED JURY INSTRUCTIONS

**Plaintiff:**

Civil Rights Act

The Civil Rights Act is designed to prevent employment discrimination based on race, color nationality and origin. To prevail on his claim under the Civil Rights Act, the Plaintiff Mr. Martin shall prove by a preponderance of the evidence that his race was a motivating factor, the plaintiff must show that he would no have been forbidden to work or his employment terminated except for his race and/or color. Generally, a motivating factor is a factor that made a difference in the defendant's decision, played a part in the defendant's decision-making process, or was a consideration that moved the defendant towards its decision. Thus, race or color may be one of a number of factors that motivated an employer's decision, and if it was it would be unlawful. Mr. Martin does not need to prove that his race was the sole or only factor in his employer's decision not to promote him. Nor does he need to show that his employer discriminated against other employees. Rather, he must prove only that his race and/or color was, as I've said, a motivating factor.

The Civil Rights Act does not require an employer to give special or favorable treatment to employees who are minorities. The employers must make employment decisions with respect to their employees without regard to their race or color. Under the Civil Rights Act, the race or color of an employee is to have neutral status.

The Civil Rights Act also required that employers have a working environment void of the use o racial derogatory remarks or slurs. The plaintiff must prove that the racial discriminatory remarks were directed at him.

19

In proving this case, the plaintiff is not required to produce direct evidence that he was forbidden from work and/or his employment terminated based upon his race or color. Employers rarely admit that they have forbidden an employee to work and/or terminated his employment for a reason expressly forbidden by law. Unlawful discrimination, when it exists, is rarely admitted. Rather, it is a fact that may be inferred from the existence of other facts- that is, it may be proven through circumstantial evidence.

In assessing the circumstantial evidence to determine whether the defendant's intent or motive was discriminatory, you may consider whether the reasons offered by the defendant for its actions are believable, or whether they are a pretext, or cover-up, for what in truth is race discrimination. The plaintiff is not required to show that the defendant's articulated reasons for forbidding and/or terminating Mr. Martin's employment are false or played no role in their decision not to allow him to work. However, the plaintiff must prove that these were not the only reasons, and that race or color was a motivating factor, as I have defined that term previously, in the decision to forbid Mr. Martin to work.

It will be up to you to decide, based upon all the direct and circumstantial evidence presented, whether or not Mr. Martin has proved that it is more likely true than not that his race was motivating factor in the defendant's decision to forbid him to work. Your sole responsibility is to decide whether the defendant decided to forbid Mr. Martin because of his race, and/or color.

In summary, in order to prove a race discrimination claim, the plaintiff must show that, more likely than not, his race was a motivating factor in the defendant's decision to forbid Mr. Martin to work and/or terminate his employment. If you find that the plaintiff has