

Not Reported in F.Supp.2d
2000 WL 49357 (D.Conn.)
**(Cite as: 2000 WL 49357 (D.Conn.))**

Page 1

**H**
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Sandra L. NEWTOWN, Plaintiff,
v.
SHELL OIL COMPANY, Defendant.

No. 3:97 CV 0167(GLG).

Jan. 18, 2000.

*MEMORANDUM DECISION*

GOETTEL, J.

*1 Following a jury trial in which the plaintiff was awarded $1,500,000 in damages, [FN1] the defendant has moved for judgment as a matter of law.

> FN1. The damages awarded by the jury were reduced, pursuant to 42 U.S.C. § 1981a(b)(3), in accordance with the cap on compensatory and punitive damages, to $326,677.44, plus attorney's fees and disbursements of $86,843.81.

Plaintiff was employed by Shell in its Texas home office from October 1991 until July 1994. She was then promoted and transferred to be a supervisor at Shell's Bridgeport distribution plant, where she worked from July 1994 until September 1995 when she was fired. The evidence was clear that she did not do a good job as supervisor. This may have been due, at least in part, to the fact that she had no prior experience at a distribution plant and, as is apparently Shell's policy, she was not given any formal training but was expected to learn the duties on the job.

She later filed this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* and Connecticut General Statute § 46a-60 (Connecticut's equivalent statute), as well as asserting other pendent state-law claims. [FN2]

> FN2. The pendent claims, except for her State Civil Rights claim, were dismissed on a motion for summary judgment, at which time the individual defendants were also dismissed from the case.

Plaintiff had three gender discrimination claims. One was that she was a victim of a hostile work environment. The second was that she was fired because of her gender, and the third was that she was fired in retaliation for complaining about the work environment.

The hostile work environment claim was extremely weak. It came down primarily to the fact that a co-worker (who occupied a somewhat higher level in the company but was not her supervisor) referred to the plaintiff as "woman." While that was probably not a very friendly appellation, since the plaintiff clearly is a woman, we do not see it as constituting gender discrimination. It is clear that the employment discrimination laws do not constitute a code of workplace civility. *Brennan v. Metropolitan Opera Ass'n,* 192 F.3d 310, 319 (2d Cir.1999). Since the jury could not find a severely pervasive atmosphere of sexually-based intimidation, ridicule, and insult sufficient to alter the terms of plaintiff's employment, *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65 (1986), we dismissed that claim on defendant's motion for judgment as a matter of law at the conclusion of plaintiff's case. We did, however, allow the claims of gender discrimination and retaliation in the termination of plaintiff's employment to go to the jury.

The jury returned a rather strange verdict. They found that gender was not a motivating factor in the plaintiff's employment termination. However, they

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 49357 (D.Conn.)
(Cite as: 2000 WL 49357 (D.Conn.))

Page 2

found that retaliation *was* a motivating factor in the ultimate decision to terminate plaintiff's employment and rendered the rather large verdict described above. Consequently, the instant motion is directed to the jury's determination that the plaintiff's employment was terminated in retaliation for her complaining about her working conditions.

In this case, the defendant articulated a legitimate non-discriminatory reason for the adverse employment action. There had been numerous complaints about the manner in which the plaintiff performed her job virtually from the beginning until her termination. Consequently, the burden shifted to the plaintiff to prove that the reasons stated by the employer were not the true reasons for its action but a mere pretext for retaliation. Defendant offered evidence that plaintiff repeatedly failed to complete tasks assigned to her and refused to take directions from her supervisors despite warnings that her employment was in jeopardy. Plaintiff attempted to rebut this evidence through her own testimony that the complaints were excessive, and that they occurred at least in part during the period when she was complaining about the remarks of her co-employee. The weakness in that approach is that the complaints about her performance preceded the co-employee's calling her "woman" and, following her complaints about this remark, that particular co-employee retired. The complaints, if anything, escalated thereafter for the months leading up to the plaintiff's employment termination.

*2 This leads us to defendant's instant motion for a judgment notwithstanding the verdict, or judgment as a matter of law as it is now known. [FN3]

> FN3. While we do not have the entire trial transcript, no objection has been made by the plaintiff to the procedural propriety of the defendant's instant motion. Defendant did move at the conclusion of the plaintiff's evidence for a directed verdict. It does not appear that the defendant moved immediately following verdict to set aside the judgment and to have judgment entered in accordance with his motion for a directed verdict. Defendant did move for judgment as a matter of law within ten days after the entry of judgment as required by Rule 50(b).

While we sincerely question the appropriateness of the jury's verdict, the standard for granting a motion for judgment as a matter of law "is appropriately strict." *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034 (1989). In order to grant such a motion the Court cannot consider the credibility of the witnesses or the weight of the evidence but rather must determine whether, viewing the evidence in the light most favorable to the non-moving party, the verdict was one that reasonable persons could not have reached. *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970). In considering a Rule 50 motion the District Court is required to "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 367 (2d Cir.1988) (internal citations and quotations omitted); *see also Gibeau v. Nellis,* 18 F.3d 107, 109 (2d Cir.1994) (holding that to be entitled to a judgment notwithstanding the jury verdict, the moving party must demonstrate that without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached); *Vermont Plastics, Inc. v. Brine, Inc.,* 79 F.3d 272, 277 (2d Cir.1996) (holding that "[i]n considering the evidence, the trial court may not weigh evidence, assess credibility, or substitute its opinion of the facts for that of the jury."). Only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict" as it did may the Court properly grant the motion. *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992) (internal citations and quotations omitted); *see also Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1039 (2d Cir.1992). Consequently, while we believe that this jury's verdict is contrary to the evidence and we have a firm conviction that the verdict was incorrect, we are unable to grant the motion for judgment as a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2000 WL 49357 (D.Conn.)  
**(Cite as: 2000 WL 49357 (D.Conn.))**

Page 3

matter of law.

We do note that our opinion in this regard would have been sufficient for the a granting of a motion for a new trial. However, no such motion has been made. The Court can *sua sponte* grant a new trial if it does so within ten days of the entry of judgment. *See* Rule 59(d), Fed.R.Civ.P. However, more than ten days have passed. While there are cases which suggest that the Court can grant a new trial even absent such a motion, this is restricted to those cases in which the standard for granting of a judgment as a matter of law has been met. *See Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 414 (8 th Cir.1985); *Kain v. Winslow Mftg., Inc.,* 736 F.2d 606 (10 th Cir.1984), *cert. denied,* 470 U.S. 1005 (1985); *see generally* 9A Wright & Miller, *Federal Prac. & Proc. Civ.2d,* § 2538 (Rule 50). As we have already indicated we do not believe that this extremely strict standard has been met here. Consequently, we are powerless to offer the defendant any relief.

\*3 The motion for judgment as a matter of law (Doc. No. 51) is therefore DENIED.

2000 WL 49357 (D.Conn.)

· Motions, Pleadings and Filings (Back to top)

- 3:97CV00167 (Docket)  
  (Jan. 27, 1997)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.