Westlaw.

214 F.Supp.2d 226                                                                                                        Page 1
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

H

United States District Court,
D. Connecticut.

Hassan SABIR, Plaintiff,
v.
Det. James C. JOWETT, Det. Dennis Lisee, and Sgt. Lewis Fusaro, Defendants.

No. CIV.A.3:97-CV-02249(CFD).

July 10, 2002.

Casino patron brought § 1983 action against Connecticut state troopers, seeking to recover for alleged unlawful arrest and use of excessive force and intentional infliction of emotional distress (IIED) under Connecticut law. Following entry of jury verdict in patron's favor, troopers moved for judgment as matter of law and patron moved for attorney fees. The District Court, Droney, J., held that: (1) evidence supported jury's finding that no probable cause existed for arrest of patron; (2) evidence supported determination that patron's nolo contendere plea was not a conviction; (3) evidence supported jury's determination that trooper's conduct was extreme and outrageous, on IIED claim; (4) evidence supported compensatory damages award of $75,001 and punitive damages award of $125,000; (5) damages awards were not excessive; and (6) award of $217,002.37 in attorney fees, under § 1988, would not be double recovery.

Motions granted in part and denied in part.

West Headnotes
**[1] Federal Civil Procedure** ⚞2111
170Ak2111 Most Cited Cases
**[1] Federal Civil Procedure** ⚞2601
170Ak2601 Most Cited Cases
Because a judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored. Fed.Rules Civ.Proc.Rule 50(b), 28 U.S.C.A.
**[2] Federal Civil Procedure** ⚞2152
170Ak2152 Most Cited Cases
**[2] Federal Civil Procedure** ⚞2608.1
170Ak2608.1 Most Cited Cases
Trial court may properly grant judgment as a matter of law where viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. Fed.Rules Civ.Proc.Rule 50(b), 28 U.S.C.A.
**[3] Federal Civil Procedure** ⚞2608.1
170Ak2608.1 Most Cited Cases
Judgment as a matter of law is granted when: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it. Fed.Rules Civ.Proc.Rule 50(b), 28 U.S.C.A.
**[4] Federal Civil Procedure** ⚞2609
170Ak2609 Most Cited Cases
On a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury. Fed.Rules Civ.Proc.Rule 50(b), 28 U.S.C.A.
**[5] Federal Civil Procedure** ⚞2142.1
170Ak2142.1 Most Cited Cases
**[5] Federal Civil Procedure** ⚞2608.1
170Ak2608.1 Most Cited Cases
Weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that a reasonable juror would have been compelled to accept the view of the moving party. Fed.Rules Civ.Proc.Rule 50(b), 28 U.S.C.A.
**[6] Civil Rights** ⚞1088(4)
78k1088(4) Most Cited Cases
(Formerly 78k133)
There can be no federal civil rights claim for false arrest where the arresting officer had probable

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 2
214 F.Supp.2d 226
**(Cite as: 214 F.Supp.2d 226)**

cause; there is "probable cause" when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.

**[7] Civil Rights 1420**
78k1420 Most Cited Cases
(Formerly 78k242(5))
The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction, on civil rights false arrest claim.

**[8] False Imprisonment 13**
168k13 Most Cited Cases
Evidence was sufficient to support jury's conclusion that state trooper lacked probable cause to arrest casino patron on charges of breach of the peace and interfering with an officer, in violation of Connecticut law, on patron's false arrest claim; although trooper later obtained written statement from casino employee, trooper had no signed complaint at time of arrest, videotape of patron's interaction with casino employee did not show that patron was acting in belligerent manner when first approached by trooper. U.S.C.A. Const.Amend. 4; C.G.S.A. §§ 53a-181, 53a-167a.

**[9] Arrest 63.4(8)**
35k63.4(8) Most Cited Cases
Arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity. U.S.C.A. Const.Amend. 4.

**[10] False Imprisonment 13**
168k13 Most Cited Cases
Evidence was sufficient to support jury's determination that casino patron's conduct prior to stepping away from state troopers was not probable cause for arrest for breach of peace and interfering with officer, under Connecticut law, on false arrest claim; patron testified that he did not use profanity when talking with trooper, trooper testified that patron's demeanor was calm at beginning of interaction, casino's videotape supported trooper's observation, and patron testified that he told troopers he had to leave to catch specific bus and he was never informed not to. U.S.C.A. Const.Amend. 4; C.G.S.A. §§ 53a-181, 53a-167a.

**[11] False Imprisonment 13**
168k13 Most Cited Cases
Evidence was sufficient to support jury's determination that probable cause did not arise for state troopers' arrest of casino patron for interfering with officer or breach of peace, under Connecticut law, when patron took two steps away from troopers, on patron's false arrest claims; significance of the two steps was unclear due to conflicting testimony as to timing of patron's arrest. U.S.C.A. Const.Amend. 4; C.G.S.A. §§ 53a-181, 53a-167a.

**[12] Arrest 63.4(1)**
35k63.4(1) Most Cited Cases
Related offenses are relevant when assessing whether a police officer had probable cause for an arrest. U.S.C.A. Const.Amend. 4.

**[13] Civil Rights 1376(2)**
78k1376(2) Most Cited Cases
(Formerly 78k214(2))
Government officials performing discretionary functions generally are shielded from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 42 U.S.C.A. § 1983.

**[14] Civil Rights 1376(2)**
78k1376(2) Most Cited Cases
(Formerly 78k214(2))
In general, public officials are entitled to qualified immunity, under § 1983, if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. 42 U.S.C.A. § 1983.

**[15] Civil Rights 1407**
78k1407 Most Cited Cases
(Formerly 78k240(5))
On § 1983 claim, burden of raising and establishing the affirmative defense of qualified immunity, either in a motion for summary judgment or at trial, rests on the defendants. 42 U.S.C.A. § 1983.

**[16] Civil Rights 1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
Police officer is entitled to qualified immunity shielding him or her from a § 1983 claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 3

U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.
**[17] Arrest** ⚖63.4(2)
35k63.4(2) Most Cited Cases
**[17] Civil Rights** ⚖1376(6)
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
Police officer has probable cause to arrest when he or she is in possession of facts sufficient to warrant a person to believe that the suspect had committed or was committing an offense, as would support defense of qualified immunity to § 1983 false arrest claim, and courts are to consider the facts available to the officer at the time of the arrest. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[18] Civil Rights** ⚖1376(6)
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
Police officer's actions are "objectively unreasonable," in context of qualified immunity defense to § 1983 false arrest claim, when no officer of reasonable competence could have made the same choice in similar circumstances. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[19] Civil Rights** ⚖1432
78k1432 Most Cited Cases
(Formerly 78k244)
Evidence was sufficient to raise jury question as to whether state police detective's arrest of casino patron, for breach of peace and interfering with officer, was objectively reasonable, on detective's qualified immunity defense on patron's § 1983 false arrest claims. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; C.G.S.A. §§ 53a-181, 53a-167a.

**[20] Civil Rights** ⚖1423
78k1423 Most Cited Cases
(Formerly 78k242(6))
Evidence was sufficient to support jury's determination that casino patron's nolo contendere plea to charges arising from arrest at casino was not a conviction, on state police detective's defense of qualified immunity to patron's § 1983 false arrest claim; patron testified that he understood all casino-related charges had been dismissed and patron's criminal attorney testified that no guilty plea was ever entered to casino charges and that nolo plea was entered only to incident occurring at hospital, and criminal records suggested no evidence of plea bargain relating to casino charges. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[21] Civil Rights** ⚖1420
78k1420 Most Cited Cases
(Formerly 78k242(5))
**[21] False Imprisonment** ⚖13
168k13 Most Cited Cases
Conviction is conclusive proof of probable cause for an arrest. U.S.C.A. Const.Amend. 4.

**[22] False Imprisonment** ⚖16
168k16 Most Cited Cases
Person who thinks there is not even probable cause to believe that he committed the crime with which he is charged must pursue the case to an acquittal or unqualified dismissal, to support false arrest claim. U.S.C.A. Const.Amend. 4.

**[23] Civil Rights** ⚖1376(6)
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
**[23] Criminal Law** ⚖303.10
110k303.10 Most Cited Cases
A "nolle" is, except when limited by statute or rule of practice, under Connecticut law, a unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the arrestee in jeopardy, in context of determining whether probable cause existed for arrest based on disposition of criminal charges against arrestee, at least some of which were nolled, on defense of qualified immunity to § 1983 false arrest claim. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; C.G.S.A. § 54-56b; Practice Book 1978, § 726.

**[24] Damages** ⚖192
115k192 Most Cited Cases
Evidence was sufficient to support jury's determination that state trooper's conduct was extreme and outrageous as would casino patron's Connecticut law intentional infliction of emotional distress (IIED) claim; jury could have found that trooper permitted hospital security officer to pepper spray arrested casino patron while he was in handcuffs, that trooper transported patron outside on cold winter night while patron wore only socks and underwear, and that trooper left patron in cold cell in that condition for several hours, and patron suffered emotional distress.

**[25] Damages** ⚖57.21
115k57.21 Most Cited Cases
(Formerly 115k50.10)
There are four elements to a Connecticut law claim of intentional infliction of emotional distress: (1) that defendant intended to inflict emotional distress,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
**(Cite as: 214 F.Supp.2d 226)**

Page 4

or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that defendant's conduct was extreme and outrageous, (3) that defendant's conduct was the cause of the emotional distress, and (4) that the emotional distress suffered by the plaintiff was severe.

**[26] Damages ⟰57.23(1)**
115k57.23(1) Most Cited Cases
(Formerly 115k50.10)
Under Connecticut law, emotional distress is severe when it reaches a level which no reasonable person could be expected to endure; if the enormity of the outrage itself carries conviction that there has in fact been severe and serious mental distress, which is neither feigned nor trivial, bodily harm is not required.

**[27] Federal Civil Procedure ⟰2338.1**
170Ak2338.1 Most Cited Cases
**[27] Federal Civil Procedure ⟰2339**
170Ak2339 Most Cited Cases
Generally, a motion for a new trial should be granted when the trial court concludes that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice; a new trial may be granted when the jury's verdict is against the weight of the evidence. Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[28] Federal Civil Procedure ⟰2339**
170Ak2339 Most Cited Cases
**[28] Federal Civil Procedure ⟰2373**
170Ak2373 Most Cited Cases
Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict; moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. Fed.Rules Civ.Proc.Rules 50(b), 59(a), 28 U.S.C.A.

**[29] Federal Civil Procedure ⟰2338.1**
170Ak2338.1 Most Cited Cases
District court considering a motion for a new trial must bear in mind that the court should only grant such a motion when the jury's verdict is egregious; accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility. Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[30] Federal Civil Procedure ⟰2345.1**
170Ak2345.1 Most Cited Cases
When a defendant's motion for new trial contests the size of a damage award, a court must decide whether or not the verdict is excessive. Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[31] Federal Civil Procedure ⟰2315**
170Ak2315 Most Cited Cases
**[31] Federal Civil Procedure ⟰2345.1**
170Ak2345.1 Most Cited Cases
**[31] Federal Civil Procedure ⟰2377**
170Ak2377 Most Cited Cases
If, on motion for new trial, a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount; it may not, however, reduce the damages without offering the prevailing party the option of a new trial. Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[32] Damages ⟰128**
115k128 Most Cited Cases
A jury's damage award is excessive when the award is so high as to shock the judicial conscience and constitute a denial of justice; further, a damage award is excessive if it is the result of a miscarriage of justice and represents a windfall to the plaintiff without regard to his injury.

**[33] Civil Rights ⟰1464**
78k1464 Most Cited Cases
(Formerly 78k274)
Evidence was sufficient to support award of $75,001 in compensatory damages for state troopers' civil rights violations of casino patron, on patron's § 1983 false arrest and excessive force claims; patron was forced to seek medical treatment for injuries he sustained, he had to hire and pay for attorney resulting from troopers' actions, and he suffered physical pain and emotional distress resulting from the incidents. U.S.C.A. Const.Amends. 4, 8; 42 U.S.C.A. § 1983.

**[34] Civil Rights ⟰1463**
78k1463 Most Cited Cases
Embarrassment.
(Formerly 78k273)
Expert witness evidence is not required to sustain an award of emotional distress damages in § 1983 cases. 42 U.S.C.A. § 1983.

**[35] Civil Rights ⟰1465(1)**
78k1465(1) Most Cited Cases
(Formerly 78k275(1))
Evidence was sufficient to support award to casino patron of $125,000 in punitive damages against state troopers, on § 1983 false arrest and excessive

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
**(Cite as: 214 F.Supp.2d 226)**

Page 5

force claims by casino patron; videotape of events corroborated some of patron's testimony regarding events, ratio of 1.66 to 1 between punitive damages and compensatory damages, which were $75,001, was reasonable, punitive damages award was not markedly different from penalties imposed in comparable cases, and troopers used violence to subdue patron. 42 U.S.C.A. § 1983.

**[36] Civil Rights ⊂⇒1465(1)**
78k1465(1) Most Cited Cases
(Formerly 78k275(1))
Punitive damages may be awarded under § 1983 to deter or punish constitutional violations. 42 U.S.C.A. § 1983.

**[37] Damages ⊂⇒94**
115k94 Most Cited Cases
To determine whether a jury award of punitive damages is excessive and whether it shocks the judicial conscience, courts consider several factors, including the degree of reprehensibility of the defendants' misconduct, the disparity between the plaintiff's compensatory damages and his punitive damages award, and the difference between this remedy and the civil penalties authorized or imposed in comparable cases.

**[38] Federal Civil Procedure ⊂⇒2345.1**
170Ak2345.1 Most Cited Cases
On motion for new trial on punitive damages claim, courts should not balance the number of high and low awards and reject the verdict in the instant case if the number of the lower awards is greater; rather, courts inquire whether the verdict is within reasonable range. Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[39] Damages ⊂⇒94**
115k94 Most Cited Cases

**[39] Federal Civil Procedure ⊂⇒2377**
170Ak2377 Most Cited Cases
In most cases, on motion for new trial, the ratio of punitive to compensatory damages will be within a constitutionally acceptable range, and remittitur will not be justified on this basis; the ratio of 1.66 to 1 is within an acceptable range. Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[40] Federal Civil Procedure ⊂⇒2345.1**
170Ak2345.1 Most Cited Cases
State troopers could not make their financial situation part of motion for new trial on issue of punitive damages award in action against troopers by casino patron who asserted § 1983 false arrest and excessive force claims; troopers provided no evidence of their financial resources. U.S.C.A. Const.Amends. 4, 8; 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 59(a), 28 U.S.C.A.

**[41] Federal Courts ⊂⇒416**
170Bk416 Most Cited Cases
State law governs when assessing the evidence of emotional distress to determine whether it is adequate to support the verdict.

**[42] Federal Civil Procedure ⊂⇒2377**
170Ak2377 Most Cited Cases
Under Connecticut law, a court may grant remittitur on award of damages for intentional infliction of emotional distress (IIED) only when the jury verdict is excessive as a matter of law.

**[43] Damages ⊂⇒140.5**
115k140.5 Most Cited Cases
(Formerly 115k130.1)
Under Connecticut law, the size of the verdict alone, on claim for intentional infliction of emotional distress (IIED), does not determine whether it is excessive; the only practical test to apply is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.

**[44] Damages ⊂⇒192**
115k192 Most Cited Cases
Under Connecticut law, trial court is required to view plaintiff's evidence in support of his claim for compensatory damages due to emotional distress in the light most favorable to the plaintiff, in determining whether the verdict on intentional infliction of emotional distress (IIED) claim returned was reasonably supported thereby.

**[45] Damages ⊂⇒140.5**
115k140.5 Most Cited Cases
(Formerly 115k130.1)
Compensatory damages award of $25,000 against state trooper, for intentional infliction of emotional distress (IIED) to casino patron, was not excessive, under Connecticut law; patron testified that as result of trooper's actions in unlawfully arresting patron and using excessive force, patron suffered recurring fear, including horrible recurring nightmares and sleeplessness, and jury was instructed that patron could not recover twice for same injury. U.S.C.A. Const.Amends. 4, 8.

**[46] Damages ⊂⇒221(8)**
115k221(8) Most Cited Cases

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 6

Jury's compensatory damages award is not duplicative simply because it allocates damages under two distinct causes of action.

[47] Federal Civil Procedure ⚖2737.4
170Ak2737.4 Most Cited Cases
Most useful starting point for determining the amount of a reasonable attorney fee award is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, or the lodestar figure. 42 U.S.C.A. § 1988.

[48] Federal Civil Procedure ⚖2737.4
170Ak2737.4 Most Cited Cases
On motion for attorney fee award, where a particular case involves several legal theories relating to a common core of underlying facts, a court need not analyze fees on a claim-by-claim basis, but instead should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. 42 U.S.C.A. § 1988.

[49] Civil Rights ⚖1487
78k1487 Most Cited Cases
(Formerly 78k302)
When a plaintiff obtains excellent results his attorney should recover a fully compensatory fee award, under § 1988, and the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit; where a plaintiff has achieved only limited success, however, reliance upon the lodestar calculation without some sort of reduction based on the degree of success achieved may result in an excessive fee award. 42 U.S.C.A. § 1988.

[50] Civil Rights ⚖1487
78k1487 Most Cited Cases
(Formerly 78k302)
Extent of a plaintiff's success is a crucial factor in determining the amount of an award of attorney fees under § 1988. 42 U.S.C.A. § 1988.

[51] Civil Rights ⚖1490
78k1490 Most Cited Cases
(Formerly 78k305)
Where the documentation of hours is inadequate, the district court may reduce the attorney fee award under § 1988 accordingly. 42 U.S.C.A. § 1988.

[52] Civil Rights ⚖1487
78k1487 Most Cited Cases
(Formerly 78k302)
Following factors set forth in *Hensley* may be considered on motion for attorney fees under § 1988: (1) time and labor required; (2) novelty and difficulty of questions; (3) skill requisite to perform legal service properly; (4) preclusion of employment by attorney due to acceptance of case; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of attorneys; (10) undesirability of case; (11) nature and length of professional relationship with client; and (12) awards in similar cases. 42 U.S.C.A. § 1988.

[53] Civil Rights ⚖1486
78k1486 Most Cited Cases
(Formerly 78k301)
Casino patron was not required to exhaust administrative claims prior to pursuing false arrest claim against state troopers under § 1983, and thus 8.85 hours billed by attorney for legal work related to casino patron's complaint to Connecticut Claims Commission were not compensable on motion for attorney fee award under § 1988. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. §§ 1983, 1988.

[54] Civil Rights ⚖1486
78k1486 Most Cited Cases
(Formerly 78k301)
Some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed on the litigation and thus are compensable under § 1988. 42 U.S.C.A. § 1988.

[55] Civil Rights ⚖1486
78k1486 Most Cited Cases
(Formerly 78k301)
Given that § 1983 does not require plaintiffs to exhaust administrative remedies, time spent in pre-litigation administrative hearings is not compensable, on motion for attorney fees under § 1988, because such hearings cannot be considered an action or proceeding to enforce § 1983. 42 U.S.C.A. §§ 1983, 1988.

[56] States ⚖169
360k169 Most Cited Cases
Under Connecticut law, plaintiffs need not seek permission from the Connecticut Claims Commissioner to bring a claim alleging an intentional tort.

[57] Civil Rights ⚖1486
78k1486 Most Cited Cases
(Formerly 78k301)
Award of attorney fees, under § 1988, in successful false arrest action by casino patron against state troopers would not be reduced by amount of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 7

compensable time spent deposing witnesses regarding state trooper defendants; patron contended that such depositions were necessary, and other hours related to dismissed parties and claims were not included on fee award papers. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1988.

**[58] Federal Civil Procedure ☞2737.5**
170Ak2737.5 Most Cited Cases
Overall hours billed by casino patron's attorney in false arrest and excessive force action against state troopers were excessive, and thus total fee award was properly reduced by 10%.

**[59] Civil Rights ☞1488**
78k1488 Most Cited Cases
(Formerly 78k303)
Where there is evidence that counsel is seeking compensation, under § 1988, for excessive hours, the court has the discretion to simply deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. 42 U.S.C.A. § 1988.

**[60] Civil Rights ☞1488**
78k1488 Most Cited Cases
(Formerly 78k303)
Attorney's hourly rate under § 1988 should be calculated according to those prevailing in the community for similar services by attorneys of reasonably comparable skill, experience and reputation. 42 U.S.C.A. § 1988.

**[61] Civil Rights ☞1487**
78k1487 Most Cited Cases
(Formerly 78k302)
Award of $217,002.37 in attorney fees, under § 1988, would not be double recovery, although attorneys were entitled to roughly $60,000 based on contingency fee arrangement with plaintiff in false arrest and excessive force action against state troopers; the fee agreement provided for less than a reasonable lodestar amount, and attorneys represented that they would accept court-awarded fees rather than take anything from plaintiff's damages award. U.S.C.A. Const.Amends. 4, 8; 42 U.S.C.A. § 1988.

*234 Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, Ann Walsh Henderson, West Hartford, CT, Michael Joseph Walsh, Moukawsher & Walsh, Hartford, CT, for Plaintiff.

Robert Bishop Fiske, III, Attorney General's Office, Public Safety & Special Revenue, Terrance M. O'Neill, Attorney General's Office, Hartford, CT, for Defendants.

***RULING ON POST-JUDGMENT MOTIONS***

DRONEY, District Judge.

I. *Introduction*

The plaintiff, Hassan Sabir ("Sabir"), brought this action against Connecticut State Troopers James Jowett, Dennis Lisee, and Louis Fusaro seeking redress for various civil rights violations that occurred on February 15, 1996. [FN1] A jury trial commenced on September 4, 2001, and the jury returned a verdict in Sabir's favor on September 14, 2001. The jury awarded compensatory damages in the amount of $75,001 and punitive damages in the amount of $125,000. The Court entered judgment for Sabir on September 28, 2001.

> FN1. Sabir originally brought the action against several other defendants discussed later in this opinion, but at the time of trial, these defendants were no longer part of the case as a result of the Court's rulings on several motions to dismiss, as well as certain settlement agreements.

Currently pending are the following post-judgment motions: Defendants' Motion for New Trial and/or Remittitur [Doc. 176-1, 176-2]; Defendants' Motion for Judgment After Trial [Doc. # 178]; Plaintiff's Motion for Attorneys' Fees [Doc. # 170]; Plaintiff's Supplemental Motion for Attorneys' Fees [Doc. # 193]; and Plaintiff's Second Supplemental Motion for Attorneys' Fees [Doc. # 200].

II. *Background*

On the morning of February 15, 1996, Hassan Sabir traveled by bus from his home in Middletown, Connecticut, to the Foxwoods Resort and Casino in Ledyard, Connecticut ("the casino"), to play Keno. Upon his arrival, he learned that the Keno machine was not functioning. He waited for several hours for the Keno machine to be fixed. During this time he read and played some of the slot machines. Shortly before 4:00 p.m., when his bus was scheduled to leave the casino to return to Middletown, Sabir went to the casino credit office to request reimbursement of his bus fare because he

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

had been unable to play Keno all day. He had done this on a previous occasion when the machine was not operable.

While he was in the casino credit office, Sabir discussed his request for reimbursement with a casino host, Susan Valenti ("Valenti"). Sabir testified that he was not angry when he was speaking with Valenti and did not use profanity. Valenti testified, however, that Sabir was speaking in a very loud voice and using profanity during this discussion, as well as when he was speaking with another casino host, Stuart Eckard. Valenti refused Sabir's request for reimbursement and Sabir testified that he asked to see her supervisor or a manager. Valenti testified that she signaled to a casino security guard to call for security and that two security guards eventually arrived and began speaking with Sabir.

Connecticut State Trooper Detective James Jowett arrived on the scene shortly thereafter, followed by Trooper Dennis Lisee. Detective Jowett testified that he first spoke with Valenti about the facts of *235 the incident, [FN2] and then discussed the request for reimbursement with Sabir for a short period of time. Sabir testified that because Detective Jowett and Trooper Lisee were working undercover, he did not know at the time that they were state police officers. He then indicated to Detective Jowett and Trooper Lisee that he would like to lodge a complaint rather than pursue the reimbursement. As he began to leave, he took two steps away from defendants Jowett and Lisee. Immediately upon taking these steps, Detective Jowett and Trooper Lissee put their hands on Sabir and propelled him against a wall. Detective Jowett testified that he told Sabir that he was under arrest at this time, in part because he interpreted these two steps as a movement towards a nearby casino host. He testified that he did not base his decision to arrest Sabir on Valenti's complaint. A physical altercation ensued.

> FN2. Valenti stated that she did not recall whether such a conversation took place.

Within a few minutes, Sabir was surrounded by a group of men that included other law enforcement officials and casino security workers. Sabir was pushed down to the floor and handcuffed. During this period of time, there was evidence of a casino security officer twisting Sabir's ankles. A wheelchair eventually was called for him. Sabir testified that one of the "officers" choked him while being placed in the wheelchair.

After being wheeled through the casino, Sabir was placed in the front seat of a unmarked state police vehicle. Sabir testified that he lost consciousness after someone in the back seat choked him. He recalls waking up in the police cell at the Montville Police Barracks. His initial requests for medical treatment were denied, but he later was taken by ambulance to the William Backus Hospital in Norwich, Connecticut.

Upon admission, a hospital security guard strapped him to a gurney in the emergency room using soft restraints fastened with velcro. Defendant Connecticut State Trooper Louis Fusaro arrived at some point while Sabir was at the hospital. A physician treated Sabir and ordered x-rays, which eventually were taken. Sabir testified that he was unable to bear weight on the ankle, and a hospital employee gave him a plastic brace to wear.

After receiving the brace, Sabir was told to get dressed. He testified that could not put his pants back on, however, because he was unable to stand on his ankle, he was sore, and his pants would not fit over the ankle brace. Trooper Fusaro, hospital security guards and a Norwich police officer were present in the room at this time. Sabir testified that they "snatched" him off the gurney, causing him to fall on the floor. Another physical altercation ensued during which a hospital security guard sprayed Sabir in the eyes with cap stun, or pepper spray. Trooper Fusaro, the hospital security workers and the Norwich police officer left the room after the cap stun was used, while the plaintiff remained in the room. Sabir testified that he was left on the floor of the hospital room in a fetal position and that he was handcuffed at this time.

After a couple of minutes, Trooper Fusaro and others returned to the room. Sabir testified that Trooper Fusaro carried him out of the hospital by his neck while he was dressed only in his socks and underwear, even though the temperature outside was roughly between 10 and 20 degrees. He was returned to a cell at the police barracks and was

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226  
214 F.Supp.2d 226  
**(Cite as: 214 F.Supp.2d 226)**

Page 9

clothed only in his underwear for the remainder of the night. Sabir further testified that he remained in handcuffs in the cell.

*236 The next morning Sabir was brought to court. He was released on a promise to appear and thereafter retained counsel. Sabir was charged with the following offenses arising from the incident at the casino: Breach of Peace under Conn. Gen.Stat. § 53a-181; Failure to Submit Fingerprints under Conn. Gen.Stat. § 29-12; and Interfering with an Officer under Conn. Gen.Stat. § 53a-167a (collectively, the "casino charges"). He was charged with the following offenses arising from the incident at the hospital: Breach of Peace under Conn. Gen.Stat. § 53a-181; Criminal Attempt to Escape from Custody under Conn. Gen.Stat. § 53a-49 and § 53a-171; Interfering with an Officer under Conn. Gen.Stat. § 53a-167a; and Failure to Submit Fingerprints under Conn. Gen.Stat. § 29-12 (collectively, the "hospital charges").

On May 5, 1997, Sabir entered a plea of nolo contendere with respect to the breach of peace charge arising from the events at the hospital and was sentenced to a conditional discharge with a six months suspended sentence on this charge. The criminal escape and interfering charges related to the hospital incident were nolled at this time.

Based on these facts, the jury found pursuant to 42 U.S.C. § 1983 that Detective Jowett unlawfully arrested Sabir and that Detective Jowett and Trooper Lisee conspired to unlawfully arrest him. The jury also found pursuant to § 1983 that Detective Jowett, Trooper Lisee, and Trooper Fusaro used excessive force against him, but that Detective Jowett was entitled to qualified immunity for his use of force. Finally, the jury found under Connecticut state common law that Trooper Fusaro intentionally inflicted emotional distress on Sabir.

III. *Defendants' Motion for Judgment After Trial [Doc. # 178]*

The defendants make two principal arguments in support of their motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. First, they contend that the jury's finding that Detective Jowett unlawfully arrested Sabir lacks a sufficient evidentiary basis because the arrest was supported by probable cause and because the charges were not resolved in the plaintiff's favor. Second, they maintain that the jury's finding of intentional infliction of emotional distress against Trooper Fusaro also was not supported by sufficient evidence. The defendants do not challenge the jury's finding with respect to excessive use of force or conspiracy by Detective Jowett and Trooper Lisee to unlawfully arrest Sabir.

A. *Standard*

[1][2][3][4][5] "Because a judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored." *Prestige Imports, Inc. v. Malick* No. 5:91-CV-00450(EBB), 2001 WL 286846, *1 (D.Conn. March 13, 2001). Under Rule 50, judgment as a matter of law is only appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." Fed.R.Civ.P. 50(a); *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 120 (2d Cir.1998). "[A] court may properly grant judgment as a matter of law where viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Merrill Lynch Interfunding, Inc.,* 155 F.3d at 120 (quoting *237*Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993) (internal quotations omitted)). More specifically, judgment as a matter of law is granted when:

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or

(2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against [it].

*Galdieri-Ambrosini v. National Realty & Dev. Corp.,* 136 F.3d 276, 289 (2d Cir.1998) (quoting *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1154 (2d Cir.1994)) (internal quotation marks omitted). "In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
**(Cite as: 214 F.Supp.2d 226)**

Page 10

assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury." *Williams v. County of Westchester,* 171 F.3d 98, 101 (2d Cir.1999). "Moreover, 'weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that a reasonable juror would have been compelled to accept the view of the moving party.' " *Blackledge v. Carlone,* 126 F.Supp.2d 224, 226 (D.Conn.2001) (quoting *This Is Me, Inc. v. Taylor,* 157 F.3d 139, 142 (2d Cir.1998) (citation omitted)). [FN3]

> FN3. The defendants renewed their Rule 50(a) motion at the close of the evidence, thereby entitling them to pursue this motion. *See Pahuta v. Massey-Ferguson, Inc.,* 170 F.3d 125, 129 (2d Cir.1999).

B. *Discussion*

1. *Unlawful Arrest*

The defendants argue that the following evidence produced at trial indicates that Detective Jowett had probable cause to arrest Sabir: (1) Valenti's report to Detective Jowett of her conversation with Sabir, (2) Sabir's conduct prior to when he stepped away from the state troopers, including his alleged failure to leave the casino, and (3) the two steps which Detective Jowett testified he interpreted as movement toward a casino host.

[6][7] "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). "There is probable cause when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)). "The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction." *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983).

[8] Based on his conduct at the casino, Sabir was charged with Breach of the Peace under Conn. Gen.Stat. § 53a-181 and Interfering with an Officer under Conn. Gen.Stat. § 53a-167a. [FN4] Conn. Gen.Stat. § 53a-181 provides:

> FN4. Sabir also was charged with Failure to Submit Fingerprints as a result of the incidents related to the events at the casino, but given the grounds on which the defendants have moved for judgment as a matter of law, it does not appear that this charge is at issue in their motion.

*238 (a) A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such other person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do. For purposes of this section, "public place" means any area that is used or held out for use by the public whether owned or operated by public or private interests.

Conn. Gen.Stat. § 53a-181. Under Conn. Gen.Stat. § 53a-167a, "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties." The plaintiff presented sufficient evidence at trial to support the jury's conclusion that Detective Jowett lacked probable cause for Sabir's arrest for these charges.

[9] As an initial matter, the plaintiff argues that the fact that Detective Jowett testified that he did not base his arrest of Sabir on Valenti's report and that he based his finding of probable cause on Sabir's "two steps" indicates that Valenti's report should not be considered by the court in assessing probable cause. However, the Supreme Court has stated that

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 11

"[w]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time ... and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 470-71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (internal quotations and citations omitted). Further, "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer,* 63 F.3d at 118. Thus, the fact that Detective Jowett testified that he did not base his decision to arrest Sabir on Valenti's report does not necessarily require the court to disregard the report when determining whether the arrest was based on probable cause.

However, although Detective Jowett later obtained a written statement from Valenti, he had no signed criminal complaint at the time of the arrest, and the circumstances of Valenti's report also raise some doubt as to its accuracy and as to whether it can support a finding of probable cause. Detective Jowett testified that he had a conversation with Valenti about her interaction with Sabir prior to his own discussion with him. Valenti, on the other hand, could not recall whether such a conversation occurred at all. Further, while Detective Jowett stated that he was unable to remember the specifics of his conversation with Valenti, he later recounted specific information that Valenti had told him about Sabir, including the fact that he was making threatening gestures. Sabir, on the other hand, testified that he did not use profanity when discussing the reimbursement with Valenti and that he spoke in the same tone of voice that he was using on the witness stand. Moreover, even if the conversation between Valenti and Jowett is assumed to have occurred and Valenti *239 related the incidents in a manner consistent with Detective Jowett's recollection, there was no indication that Sabir was acting in a belligerent manner when Detective Jowett first approached him. This conclusion is supported by the videotape that was introduced into evidence, as it did not show Sabir gesturing in a way indicating that he was agitated at that time. Thus, it was reasonable for the jury to conclude that Valenti's complaint was not a sufficient basis for a finding of probable cause for the charged offenses.

[10] The jury's conclusion that Sabir's conduct prior to stepping away from the troopers was not probable cause for the arrest also is supported by the evidence. As to the breach of peace charge, Sabir testified that he did not use profanity when talking with Detective Jowett and he characterized his tone of voice as "very basic." [FN5] Detective Jowett also testified that Sabir's demeanor was calm when he began speaking with him and again, the videotape supports this observation. While Jowett also stated that Sabir eventually became loud and belligerent, this contrary evidence is not so overwhelming that reasonable and fair minded persons could not have concluded that Detective Jowett lacked probable cause for arresting Sabir for breach of peace.

> FN5. The videotape introduced at trial, which was taken from a fixed location inside the casino and recorded the events discussed here, did not contain an audio portion, and it was not possible to see Sabir's facial expressions.

The same is true with respect to the charge of interfering with an officer, which could have arisen from Sabir's alleged refusal to leave the casino host area. Sabir testified that he told the state troopers that he had to leave the casino to catch a four o'clock bus, and that he was never informed that he could not do so. Detective Jowett, on the other hand, testified that Sabir refused to leave after being ordered to do so, and Detective Lisee similarly testified that Sabir stated that he would not leave until he was reimbursed for the bus fare. Again, Sabir's testimony is sufficient to support the jury's conclusion that Detective Jowett lacked probable cause for an arrest for interfering with an officer, as the jury could have credited Sabir's testimony rather than that of Detective Jowett or Trooper Lisee.

[11] Further, as to the "two steps," Sabir testified that when he stepped away from the troopers, he was walking towards the casino host office to lodge a complaint, and he also testified that Detective Jowett never told him he was under arrest or that he was not free to leave the casino. In contrast,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.