214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 12

Detective Jowett testified that this action was a threatening movement and that he told Sabir that he was under arrest after he took those steps. Trooper Lisee stated that Sabir was attempting to leave the casino host area when he took the two steps, but that he did not recall when Sabir was actually placed under arrest. [FN6] Thus, the significance of the two steps is somewhat unclear from the conflicting testimony. It appears that the steps could have been the basis for a charge of breach of the peace as they could have been interpreted as threatening behavior. Assuming that Sabir took the steps after Detective Jowett placed him under arrest, the steps also might have been the basis for the interfering with an officer charge. Nevertheless, in light of the evidence presented at trial, it was reasonable for the jury to have concluded based *240 on Sabir's statements that Detective Jowett lacked probable cause for the arrest based on the two steps away from the troopers in the preceding counts.

> FN6. Again, given the lack of an audio portion on the videotape, it is not possible to hear when Detective Jowett stated that Sabir was under arrest, if at all.

[12] Detective Jowett also testified that he could have arrested Sabir for Disorderly Conduct, Criminal Trespass in the First Degree, and Criminal Trespass in the Second Degree. These related offenses also are relevant when assessing whether a police officer had probable cause for an arrest. *See Avery v. King,* 110 F.3d 12, 14 (6th Cir.1997).

A person is guilty of Disorderly Conduct:
> [W]hen, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic ....

Conn. Gen.Stat. § 53a-182. For many of the same reasons explained above, when the facts are viewed in the light most favorable to the non-movant, there was sufficient evidence for a jury to conclude that Detective Jowett lacked probable cause to arrest Sabir for disorderly conduct.

A person is guilty of criminal trespass in the first degree when "knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person." Conn. Gen.Stat. § 53a-107(a)(1). "A person is guilty of criminal trespass in the second degree when, knowing that he is not licensed or privileged to do so, he enters or remains in a building." Conn. Gen.Stat. § 53a-108. Again, there is sufficient evidence to support a finding that Sabir was not told to leave the casino, and that he did not remain in the casino host area after having been told to leave or knowing that he was not permitted to do so.

[13][14][15] The defendants also maintain that even if there was not probable cause for the arrest, Detective Jowett is entitled to qualified immunity for the unlawful arrest. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir.1996). The burden of raising and establishing the affirmative defense of qualified immunity, either in a motion for summary judgment or at trial, rests on the defendants. *Lee v. Sandberg,* 136 F.3d 94, 101 (2d Cir.1997). "The right not to be arrested or prosecuted without probable cause has, or course, long been a clearly established constitutional right." *Golino v. City of New Haven,* 950 F.2d 864, 869 (2d Cir.1991); *see also Lee,* 136 F.3d at 102. The plaintiff has alleged a violation of such a right.

[16][17][18] As to the second prong of the qualified immunity standard, "[a] police officer is entitled to qualified immunity shielding him or her from a claim for *241 damages for false arrest

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226 Page 13
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 128 (2d Cir.1997). An officer has probable cause to arrest when he or she is in possession of facts sufficient to warrant a person to believe that the suspect had committed or was committing an offense, and courts are to consider the facts available to the officer at the time of the arrest. *Id.* "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir.1995).

[19] Considering the evidence in the light most favorable to the plaintiff, a reasonable jury could have found that Detective Jowett was not entitled to qualified immunity for arresting Sabir. There is sufficient evidence to conclude that it was not objectively reasonable for him to have arrested Sabir for the charged or related offenses.

[20][21][22][23] The defendants also maintain that there was insufficient evidence to support the finding of unlawful arrest against Detective Jowett because there was no indication that the casino charges were disposed of in Sabir's favor. A conviction is conclusive proof of probable cause for an arrest. *See Horton v. Town of Brookfield,* No. Civ. A. 3:98CV1834, 2001 WL 263299, at *3 (D.Conn. Mar. 15, 2001) (Ruling on Motion for Summary Judgment and Motion to Dismiss). Thus, generally, "[a] person who thinks there is not even probable cause to believe that he committed the crime with which he is charged must pursue the case to an acquittal or unqualified dismissal." *Id.* (quoting *Roesch v. Otarola,* 980 F.2d 850, 853 (2d Cir.1992)). "A nolle is, except when limited by statute or rule of practice; see, e.g., General Statutes § 54-56b and Practice Book § 726; a unilateral act by a prosecutor, which ends the 'pending proceedings without an acquittal and without placing the defendant in jeopardy.' " *Cislo v. City of Shelton,* 240 Conn. 590, 692 A.2d 1255, 1260 n. 9 (1997) (quoting *State v. Lloyd,* 185 Conn. 199, 440 A.2d 867, 868 (1981)). However, there is some authority that a nolle can be a sufficient basis on which probable cause may be challenged. In *See*

*v. Gosselin,* the Connecticut Supreme Court held with respect to a malicious prosecution claim, "It is not necessary that the accused should have been acquitted. It is sufficient if he was discharged without a trial under circumstances amounting to an abandonment of the prosecution without request or arrangement with him." 133 Conn. 158, 48 A.2d 560, 561 (1946).

The Court finds that sufficient evidence was presented by the plaintiff on this issue. The plaintiff offered the testimony of Sabir and his counsel, Attorney Joseph Elder. Sabir testified that it was his understanding that all charges relating to the casino incident had been dismissed. Attorney Elder testified that no plea of guilty was ever entered with respect to any of the casino charges and that the plea of nolo contendere pertained only to the incident that occurred at the hospital. In addition, the plaintiff offered the complete state criminal file as obtained from the criminal record center in Enfield, Connecticut. These records suggest that there was no evidence of a plea bargain pertaining to the casino charges. Although the record is silent as to the exact resolution of the charges, there is no indication in the file that the resolution of the casino charges were also part of the disposition of the charges arising from the hospital incident. *242 There was no dispute that there were no other criminal proceedings arising from the subject incidents. Thus, a reasonable jury could have believed that the casino charges were resolved favorably to the plaintiff.

The defendants argue that the state criminal file indicates that the casino charges were part of the plea bargain concerning the hospital events because some of the documents contained in the criminal file include a docket number different than that found on the record of the nolo plea and judgment. The defendants contend that these documents relate to the casino charges and demonstrate that the casino charges were in fact part of the plea bargain. Still, while one document in the criminal file-a re-arrest warrant arising from Mr. Elder's failure to appear at a hearing-does contain a different docket number, the significance of the number is by no means clear. Moreover, the fact that the casino charges are not listed on the disposition sheet contained on the front page of the criminal file, yet other charges that were nolled are so listed, suggests

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 14

that the casino charges were treated differently, and perhaps dismissed, and erased, much earlier than the other charges. This finding would be consistent with the plaintiff's evidence. Thus, although the docket number issue supports the defendants' position, there is not such an overwhelming amount of evidence in favor of the defendants that reasonable and fair minded persons could not arrive at a verdict against Detective Jowett. Accordingly, the Court concludes that there is sufficient evidence to support the plaintiff's argument that the casino charges were resolved in the plaintiff's favor.

For all of these reasons, the defendants' motion for judgment as a matter of law on the unlawful arrest count against Detective Jowett is DENIED.

2. *Intentional Infliction of Emotional Distress*

[24] Trooper Fusaro contends that there was insufficient evidence to support a cause of action for intentional infliction of emotional distress under state law, and that there was insufficient evidence of an injury suffered as a result of his actions.

[25] There are four elements to a state law claim of intentional infliction of emotional distress: (1) that defendant Fusaro intended to inflict emotional distress, or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that Fusaro's conduct was extreme and outrageous, (3) that Fusaro's conduct was the cause of the emotional distress, and (4) that the emotional distress suffered by the plaintiff was severe. *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337, 1342 (1986). The evidence offered at trial was sufficient for a reasonable jury to find that the actions of Officer Fusaro were extreme and outrageous. In particular, the jury could have found that Trooper Fusaro permitted the hospital security officer to pepper spray Sabir while he was in handcuffs, that he transported Sabir outside on a cold winter night wearing only socks and underwear, and that he left him in a cold cell in that condition for several hours. Even if there was no direct evidence of intent to cause emotional distress, it would be reasonable for a jury to draw an inference that Trooper Fusaro should have known that emotional distress would result from his actions. *See Doe v. Hartnett,* No. CV960134840, 2002 WL 1293354, *2 (Conn.Super.Ct. May 8, 2002) (unpublished opinion) ("that [the defendant police officer] knew or should have known that emotional distress was the likely result of his conduct ... is largely a matter of inference" in the context of a motion for summary judgment where the defendant *243 told the plaintiff that he had heard that she had lied about being sexually assaulted).

[26] Moreover, the testimony of the plaintiff sufficiently establishes that the plaintiff did in fact suffer emotional distress as a result of Officer's Fusaro's actions. Sabir testified that the events of February 15, 1996 had a long term psychological and emotional impact on him, and that he was still experiencing that effect at the time of trial. He explained:

> When something like this happens to you the first thing you do mentally and physically, you're numb. I mean, I laid in my bed for weeks. And then when that passes and maybe you can move a little more, you become a little angry about the situation. But in the meantime, you're having nightmares. You're still terrorized. At this point right now in my life I only sleep like two and a half hours at a time. Like I said, you become angry. You're fighting a system that is bigger than you and it's continual. When this happened to me, every week or every other week I had to travel down to New London to meet with my attorney and to go to court. Sometimes nothing would happen. You walk around all the time with an emptiness inside of you.

Emotional distress is severe when "it reaches a level which 'no reasonable person could be expected to endure.' " *Almonte v. Coca-Cola Bottling Co. of N.Y., Inc.,* 959 F.Supp. 569, 575 (D.Conn.1997) (quoting *Mellaly v. Eastman Kodak,* 42 Conn.Supp. 17, 597 A.2d 846, 848 (1991)). "[I]f the enormity of the outrage itself carries conviction that there has in fact been severe and serious mental distress, which is neither feigned nor trivial, bodily harm is not required." *Whelan v. Whelan,* 41 Conn.Supp. 519, 588 A.2d 251, 252 (1991) (quoting W. Prosser & W. Keeton, Torts (5th Ed.1984) § 12, p. 64). Here, there is sufficient evidence that the plaintiff's emotional distress was severe and that he "suffered these symptoms to an extraordinary degree." *Almonte,* 959 F.Supp. at 576 (explaining that evidence that the plaintiff had experienced some sleeplessness, anxiety, and depression as a result of having been fired from his

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226  
214 F.Supp.2d 226  
(Cite as: 214 F.Supp.2d 226)

Page 15

job is not sufficient to survive a motion for summary judgment). In particular, he testified that he experienced terror as a result of the incidents at issue. Further, there also was testimony that he suffered physical harm and sought medical treatment for injuries which the jury could have attributed to Trooper Fusaro's conduct. In addition to the treatment received at William Backus Hospital on the evening of February 15, 1996, Sabir sought further medical treatment at the Community Health Center. His total medical bills were in excess of a thousand dollars. Finally, Sabir also testified that he sought counseling for his emotional distress from spiritual healers.

Accordingly, the defendants' motion for judgment as a matter of law on the state law count is DENIED.

IV. *Defendants' Motion for New Trial and/or Remittitur [Doc. 176-1, 176-2]*

A. *Background*

The Court next turns to the defendants' motion for remittitur, or in the alternative, a new trial under Fed.R.Civ.P. 59.

The jury in this case awarded compensatory damages of $25,000 against Detective Jowett for false arrest, $25,000 against Troopers Lisee and Fusaro for excessive force, and $25,000 against Trooper Fusaro for intentional infliction of emotional distress. In addition, it awarded $1 in nominal damages against Detective Jowett and Trooper Lisee for conspiracy to unlawfully *244 arrest Sabir. Finally, the jury found punitive damages against Detective Jowett and Trooper Fusaro for the federal civil rights violations in the amount of $50,000 each and against Trooper Lisee in the amount of $25,000, and determined that punitive damages also should be awarded for the state law violation, though, as instructed by the Court, the jury did not indicate a particular amount of state law punitive damages.

The defendants contend that the jury's compensatory damage awards of $25,000 against Trooper Jowett for false arrest and $50,000 against Trooper Fusaro for excessive force and intentional infliction of emotional distress, as well as the federal punitive damage awards against each defendant, are excessive and unsupported by the evidence presented at trial. [FN7]

> FN7. The defendants do not appear to contest the jury's decision to award punitive damages on the state law count.

B. *Standard*

[27][28][29] Rule 59(a) of the Federal Rules of Civil Procedure provides: "A new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Generally, a motion for a new trial should be granted when the trial court concludes that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *De Falco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001) (quoting *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 911 (2d Cir.1997)). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998)

> The standards governing a district court's consideration of a Rule 59 motion for a new trial on the grounds that the verdict was against the weight of the evidence differs in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law. Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.... A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is "egregious." ... Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility.

*Id.* at 133-34 (internal citations omitted).

[30][31] When a defendant's Rule 59 motion contests the size of a damage award, a court must decide whether or not the verdict is excessive. *Stern v. Michelangelo Apartments, Inc.,* No. 97-CV-9532 GAY, 2000 WL 33766107, *6 (S.D.N.Y. Jan. 24, 2000). "If a district court finds that a verdict is excessive, it may order a new trial, a new trial

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 16

limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Sys., Inc. v. Norse Sys., Inc.,* 49 F.3d 93, 96 (2d Cir.1995). It may not, however, reduce the damages without offering the prevailing party the option of a new trial. *Lightfoot,* 110 F.3d at 914-915.

C. *Discussion*

1. *Damages for federal civil rights violations*

[32] A jury's damage award is excessive when "the award is so high as to **245** shock the judicial conscience and constitute a denial of justice." *O'Neill v. Krzeminski,* 839 F.2d 9, 13 (2d Cir.1988) (quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978)). Further, "[a] damage award is excessive if it is the result of a miscarriage of justice and represents a windfall to the plaintiff without regard to [his] injury." *Oliver v. Cole Gift Ctr., Inc.,* 85 F.Supp.2d 109, 114 (D.Conn.2000).

[33] The defendants also argue that the evidence offered by the plaintiff cannot support the jury's award of compensatory damages for the federal civil rights violations. However, a review of the evidence offered at trial demonstrates that the compensatory damage award is adequately supported in the record. The plaintiff introduced evidence that he sustained physical injuries as a result of the defendants' unlawful actions. His evidence showed that he was forced to seek medical treatment for the injuries he sustained. The plaintiff also introduced evidence that he had to hire, and pay for, an attorney as a result of the defendants' actions. Finally, the plaintiff presented evidence that he suffered physical pain as a result of the physical injuries the defendants inflicted on him and that he suffered, and continues to suffer, emotional distress as a result of the incidents.

[34] The defendants argue that the plaintiff did not offer any corroborating evidence as to the emotional distress he suffered as a result of the defendants' conspiracy to violate his rights and the excessive force they used while falsely arresting him. Contrary to defendants' arguments, expert witness evidence is not required to sustain an award of emotional distress damages in § 1983 cases. *See, e.g., Bolden v. Southeastern Pennsylvania Transp. Auth.,* 21 F.3d 29, 34 (3d Cir.1994) (stating that all the courts of appeals that have expressly considered this issue have held that it is not required). In addition, the videotape offered by the plaintiff evidences an altercation from which it would have been reasonable for the jury to infer that Sabir was injured. Furthermore, in this case, there is undisputed evidence that the plaintiff suffered a physical injury that required medical attention, thus eliminating the difficulty of proving mental distress that exists in many cases where the plaintiffs do not suffer physical injuries as a result of the deprivations of their constitutional rights.

The jury's award of compensatory damages for the federal civil rights violations is also within the reasonable range based on awards in other cases of a similar nature. *See, e.g., Bender v. City of New York,* 78 F.3d 787, 792, 794 (2d Cir.1996) (reversing a judgment of $300,700 in compensatory damages and ordering a new trial unless the plaintiff agreed to remit $150,000 in a case arising out of a false arrest and malicious prosecution, where plaintiff's injuries consisted essentially of a minor blow to the mouth resulting in no bruise or cut, 24 hours confinement, the pendency of criminal charges for six months prior to their dismissal, and some "nightmares and occasional loss of sleep"); *Gardner v. Federated Dep't Stores,* 907 F.2d 1348, 1354 (2d Cir.1990) (ordering a new trial in diversity case under New York law unless the plaintiff agrees to remit the portion of a damages award over $50,000 for deprivation of liberty, and finding that an award of $150,000 for past pain and suffering where plaintiff was falsely arrested and held in custody for approximately eight hours, sustaining an injury to the jaw and emotional distress); *O'Neill v. Krzeminski,* 839 F.2d at 13 (upholding a compensatory award of $80,000 in civil rights action for use of excessive force based on lost wages and certain injuries even though there was no permanent damage); **246** *Sulkowska v. City of New York,* 129 F.Supp.2d 274, 308-09 (S.D.N.Y.2001) (concluding that a § 1983 plaintiff who was humiliated during a false arrest and subsequent detention and suffered from post-traumatic distress disorder with accompanying symptoms of depression, fear and disturbed sleep was entitled to $275,000 for her emotional injuries, including past and future pain and suffering).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

Page 17

[35][36][37][38] The jury also awarded a total of $125,000 in punitive damages under § 1983. Punitive damages may be awarded under § 1983 to deter or punish constitutional violations. *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (citing cases). Neither remittitur nor a new trial is appropriate for this award here also. To determine whether a jury award of punitive damages is excessive and whether it shocks the judicial conscience, courts consider several factors, including the degree of reprehensibility of the defendants' misconduct, the disparity between the plaintiff's compensatory damages and his punitive damages award, and the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 574-75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Oliver,* 85 F.Supp.2d at 115. Courts should not, however, "balance the number of high and low awards and reject the verdict in the instant case if the number of the lower awards is greater. Rather, [courts] inquire whether the ... verdict is within reasonable range." *Ismail v. Cohen,* 899 F.2d 183, 188 (2d Cir.1990).

[39] In this case, there was sufficient evidence indicating that the defendants' conduct justified the amount of punitive damages awarded, particularly in light of the video introduced at trial that corroborated some of the plaintiff's testimony regarding the events at the casino. In addition, the ratio between the punitive damages and the compensatory damages awarded is reasonable. "In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis." *Gore,* 517 U.S. at 583, 116 S.Ct. 1589. The ratio in this case--1.66 to 1-- is within an acceptable range. *See, e.g., Blackledge v. Carlone,* 126 F.Supp.2d 224, 229 (D.Conn.2001) (holding that a 40 to 1 ratio in an excessive use of force case did not justify remittitur). Further, the punitive damages award is not so high as to be markedly different from penalties imposed in comparable cases. The need for this analysis arises from the concern that when penalties for comparable misconduct are much lighter than a punitive damages award, the tortfeasor may have lacked fair notice that the wrongful conduct could entail such a substantial award. *Blackledge,* 126 F.Supp.2d at 230. The defendants' training gave them notice as to the gravity of misconduct under color of their official authority as well as notice that such misconduct could hinder their careers, *see id.,* and thus they had fair notice of the penalties involved. The award of punitive damages in this case, therefore, satisfies the three prongs required by the Supreme Court to support a substantial punitive damages award.

The Second Circuit also has identified several "aggravating factors" from the Supreme Court's decision in *Gore,* "that are 'associated with particularly reprehensible conduct' and contribute to the sense that 'some wrongs are more blameworthy than others.'" *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir.1996) (quoting *Gore,* 517 U.S. at 575, 116 S.Ct. 1589). These aggravating factors include whether a defendant's conduct was violent or presented a threat of violence. *Id.* In this case, there is no *247 dispute that the defendants used violence to subdue Sabir.

In addition, compared to awards approved in similar cases, the award here is not so high as to "shock the judicial conscience." Many § 1983 cases in this Circuit have resulted in punitive damages awards in excess of the amount at issue here. *See, e.g., Ismail,* 899 F.2d at 187 (reinstating a jury award of $150,000 in punitive damages in § 1983 case against a police officer alleging battery, false arrest, malicious prosecution and abuse of process claims); *Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876, 880-81 (2d Cir.1988) (holding that in a section 1983 case a punitive damage award of $350,000 was merited for intentional infliction of emotional distress); *O'Neill,* 839 F.2d at 13 (holding that a $185,000 punitive damage assessment against two police officers was not excessive even though the plaintiff suffered no permanent physical disability in light of the beating that two of the officers gave plaintiff about the face when he was handcuffed and unable to defend himself while a third officer watched).

The defendants also argue that the punitive damages award is even "[m]ore egregious" as to Lisee, because he is no longer employed in law enforcement and, therefore, the award will have no deterrent effect. The jury, however, may have partly intended to punish Lisee for violating Mr. Sabir's rights to deter others in law enforcement

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226  
214 F.Supp.2d 226  
(Cite as: 214 F.Supp.2d 226)

Page 18

from similar conduct. *See Lee v. Edwards,* 101 F.3d at 809; *see also Zarcone,* 572 F.2d at 56 (rejecting similar argument where a judge against whom various civil rights violations were charged under § 1983 had been removed from office because "punitive damages are meant to deter others as well as the particular defendant").

[40] Defendants also argue that punitive damages awards against public employees are normally much lower due to the well-known fact that public salaries are low. A review of the caselaw indicates that this is not the case. *See, e.g., Hughes,* 850 F.2d at 880-81 (upholding a punitive damage award of $175,000 against a police officer); *O'Neill,* 839 F.2d at 13 (2d Cir.1988) (upholding a $185,000 punitive damage assessment against two police officers). Relatedly, the defendants also argue that an award should not be so high as to result in financial ruin of a defendant. The defendants also mention that the State has not made a commitment to indemnify the defendants. [FN8] The defendants have not provided any evidence of their financial resources, and under these circumstances they cannot make their financial situation a part of this motion. *See, e.g., Zarcone,* 572 F.2d at 56 (stating that "the decided cases and sound principle require that a defendant carry the burden of showing his modest means facts peculiarly within his power if he wants this considered in mitigation of damages"). [FN9]

>    FN8. In the pre-trial conference, counsel for the defendants indicated that historically the State has indemnified police officers for 1983 damage awards. Counsel further indicated that the State would indemnify the officers in this case, unless something "untoward" happened at trial, such as the officers lying under oath.

>    FN9. Defendants also make the argument that the punitive damages award in this case "undermines Connecticut's prohibition of resistance to arrests as provided for in C.G.S. section 53a-23" because it "would encourage citizens to resist an otherwise lawful arrest." The jury determined, however, that the defendants falsely arrested Mr. Sabir and used excessive force against him. Thus,

the punitive damages award does not encourage citizens to resist a lawful arrest. Nor does it, as defendants contend, "deter police officers from making necessary and appropriate decisions in the public interest."

*248 2. *Damages for intentional infliction of emotional distress*

[41][42][43][44] Connecticut law governs when assessing the evidence of emotional distress to determine whether it is adequate to support the verdict. *Gagne v. Town of Enfield,* 734 F.2d 902, 905 (2d Cir.1984) (applying Connecticut law to a punitive damages award on a state law claim). Under Connecticut law, "a court may grant remittitur only when the jury verdict is excessive as a 'matter of law.' " *Imbrogno v. Chamberlin,* 89 F.3d 87, 90 (2d Cir.1996) (citing *Peck v. Jacquemin,* 196 Conn. 53, 491 A.2d 1043, 1052 (1985) and *Mauro v. Yale-New Haven Hosp.,* 31 Conn.App. 584, 627 A.2d 443, 446 (1993)). "The size of the verdict alone does not determine whether it is excessive. The only practical test to apply ... is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." *Schanzer v. United Technologies Corp.,* 120 F.Supp.2d 200, 217 (D.Conn.2000) (quoting *Gaudio v. Griffin Health Services Corp.,* 249 Conn. 523, 733 A.2d 197 (1999) (internal citations omitted)). Further, "the Court is required to view plaintiff's evidence in support of his claim for compensatory damages due to emotional distress in the light most favorable to the plaintiff, in determining whether the verdict returned was reasonably supported thereby." *Id.* (citing *Oakes v. New England Dairies,* 219 Conn. 1, 591 A.2d 1261 (1991)).

[45] The compensatory damages award against Trooper Fusaro for intentional infliction of emotional distress also is neither excessive nor unsupported by the evidence. Sabir testified as to the emotional injuries he endured as a result of Trooper Fusaro's actions, including the recurring fear he suffers. He testified that, since the incident, every time he sees a police officer he is affected.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226 Page 19
214 F.Supp.2d 226
(Cite as: 214 F.Supp.2d 226)

He also testified that he suffers from horrible, recurring nightmares and sleeplessness as a result of this incident. Because there was more than sufficient evidence that the mental distress damages awarded by the jury were supported by the evidence and not excessive, the defendants' arguments to the contrary fail.

[46] The defendants also maintain that the compensatory damage awards are duplicative. However, "a jury's award is not duplicative simply because it allocates damages under two distinct causes of action." *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 497 (2d Cir.1995). Moreover, the Second Circuit has noted that, "the tort of inflicting emotional distress in the context of a false arrest or a malicious prosecution possibly involves some component of damages over and above the damages that may be awarded for these police misconduct torts." *Bender v. City of New York,* 78 F.3d 787 (2d Cir.1996). The jury also was clearly instructed that a plaintiff may not recover twice for the same injury and "any damage award for the intentional infliction of emotional distress claim must be limited to the component of injury you find sustained for this claim, if any, over and above whatever emotional distress you have already compensated for in your awards for other claims."

For these reasons, the punitive damages awarded by the jury were fully supported by the evidence and are reasonable, and thus the defendants' motion for a new trial or for remittitur is DENIED.

V. *Plaintiffs' Motions for Attorneys' Fees [Docs. 170, 193, 200]*

The plaintiff in this case, as the prevailing party, has requested attorneys' fees in the amount of $313,637.50 and costs in the *249 amount of $8,016.25. Although the defendants do not appear to contest that Sabir is a prevailing party, they argue that the amounts of attorneys' fees and costs that he requests are based on excessive hours billed and hourly rates that do not reflect the prevailing rates for attorneys in this judicial district.

[47][48][49] Courts may award attorney's fees to prevailing parties in actions brought under § 1983. 42 U.S.C. § 1988; *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that the time "reasonably expended on the litigation" is compensable under section 1988 ). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar figure. *Id.* at 433, 103 S.Ct. 1933; *see also Weyant v. Okst,* 198 F.3d 311, 316 (2d Cir.1999). Where a particular case involves several legal theories relating to a common core of underlying facts, a court need not analyze fees on a claim-by-claim basis, but instead "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. When a plaintiff obtains "excellent results" his attorney should recover a fully compensatory fee and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* Where a plaintiff has achieved only limited success, however, reliance upon the lodestar calculation without some sort of reduction based on the degree of success achieved may result in an excessive fee award. *Id.* at 436, 103 S.Ct. 1933.

[50][51][52] "[T]he extent of a plaintiff's success is a crucial factor in determining the amount of an award of attorney's fees under 42 U.S.C. Section 1988." *Id.* at 433, 103 S.Ct. 1933; *see also Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 760 (2d Cir.1998). Nevertheless, "[w]hile the degree of success is the most critical factor in determining the reasonableness of a fee award, ... [the Second Circuit] consistently [has] resisted a strict proportionality requirement in civil rights cases." *Lunday v. City of Albany,* 42 F.3d 131, 134-35 (2d Cir.1994) (per curiam) (citations and internal quotations omitted). In addition, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. The following factors set forth in *Hensley* also may be considered:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226  
214 F.Supp.2d 226  
(Cite as: 214 F.Supp.2d 226)

Page 20

(7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
*Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 97, 98 (2d Cir.1997) (citation omitted).

[53][54][55][56] The defendants make several arguments as to why the plaintiff did not obtain "excellent results" and thus why he should not recover a fee award in the amount claimed. First, they contend that 8.85 hours billed by Attorney Walsh should not be compensated because they are attributable to legal work related to the *250 plaintiff's complaint to the Connecticut Claims Commission. "[S]ome of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation' " and thus are compensable. *Webb v. Board of Education,* 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933) (referring to "obvious examples" such as "drafting initial pleadings and the work associated with the development of the theory of the case"). However, given that § 1983 does not require plaintiffs to exhaust administrative remedies, time spent in pre-litigation administrative hearings is not compensable because such hearings cannot be considered an "action or proceeding" to enforce § 1983. *Id.* at 241, 105 S.Ct. 1923. Therefore, these hours are not compensable. [FN10]

> FN10. The Court also notes that plaintiffs need not seek permission from the Claims Commissioner to bring a claim alleging an intentional tort. *See Cates v. State of Connecticut Dep't of Corrections,* No. 3:98CV2232(SRU), 2000 WL 502622, *14 (D.Conn. Apr. 13, 2000).

[57] Second, the defendants maintain that the plaintiff may not recover for 26 hours of work performed by Attorney Walsh and 3.75 hours of work performed by Attorney Henderson on claims involving former casino co-defendants, and 30 hours of work performed by Attorney Walsh and 6.75 hours of work pertaining to hospital co-defendants. In addition to the three state troopers, the original complaint in this case sought damages against Armondo Sebastian, Raymond Brown, Robert Mertz and Michael Carlini of the Foxwoods Resort and Casino, as well as Foxwoods itself; Officer Warren Knight and the City of Norwich; Tammy Gromko and Lee Rummel of the William Backus Hospital, as well as the hospital itself; the State of Connecticut; and Commissioner of Public Safety Kenneth Kirschner. It included allegations under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, including excessive force, false arrest, malicious prosecution, breach of contract, conspiracy, equal protection and negligent, as well as state law claims of false arrest, false imprisonment, assault, battery, malicious prosecution, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, and gross negligence. The plaintiff explains that he has not requested compensation for any of the hours expended on claims involving defendants who have been dismissed from the case.

The time records indicate that the plaintiff generally has not included hours spent on the claims against the dismissed defendants. He contends, however, that depositions of several of those individuals such as Armondo Sebastian and Tammy Gromko were necessary to gather information regarding the state trooper defendants and thus he has included certain hours expended on such items. The Court concludes that these depositions, as well as other related time entries, were reasonably related to the claims against the state troopers. Accordingly, the fee award will not be reduced on this basis.

[58][59] Third, the defendants argue that Attorneys Walsh and Henderson billed excessively and duplicatively 86.25 hours for researching and writing their opposition to the state police defendants' motion to dismiss, 14 hours for researching the indemnification issue, 39 hours for researching and writing the opposition for judgment as a matter of law, 57.5 hours for opposing the motion for a new trial or remittitur, and 41.50 hours for drafting a motion in support the plaintiff's request for attorneys' fees; and that Attorney *251 Walsh billed excessively for the 31 hours spent preparing for oral arguments on the post-trial

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226                                                                                          Page 21
214 F.Supp.2d 226
**(Cite as: 214 F.Supp.2d 226)**

motions and writing his proposed opinion requested by the Court. The defendants suggest that the fee award for these hours should be reduced by 50 percent as a result of their excessive nature. Where there is evidence that counsel is seeking compensation for excessive hours, "the court has the discretion to simply deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.' " *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 173 (2d Cir.1998) (citing *New York Ass'n of Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)). The Court concludes that the overall hours billed by plaintiff's counsel are excessive and it is appropriate to reduce the total fee award by 10 percent. [FN11]

> FN11. The defendants also argue that the plaintiff is not entitled to attorneys' fees for work relating to the state law claims, but has not provided any indication that the plaintiff has included in his billing records any entries that can solely be attributed to the state law claims against the state troopers. Accordingly, the Court will not reduce the fee award on this basis.

[60] Fourth, the defendants maintain that the hourly rates set forth by the plaintiff are excessive. An attorney's hourly rate under § 1988 should be calculated according to those prevailing in the community for similar services by attorneys of reasonably comparable skill, experience and reputation. *See Blum v. Stenson,* 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Cruz v. Local Union No. 3,* 34 F.3d at 1159. The Court finds that the hourly rates charged by Sabir's counsel are excessive in comparison to rates charged for similar services of attorneys of reasonably comparable skill, experience, and reputation in Connecticut. The Court concludes that a rate of $275 an hour is reasonable for Attorney Walsh's work on this case. In reaching this conclusion, the Court has considered the affidavits submitted by Attorney Walsh, the number of years he has been in practice, as well as the fact that his firm does not specialize in the field of civil rights litigation. As to Attorney Henderson, the Court finds that an hourly rate of $250 is reasonable, taking into account the same factors listed above. Finally, the Court concludes that an hourly rate of $200 is reasonable for Attorney Sklarz's work on this case, again considering the foregoing factors, as well as the fact that he has practiced law for no more than three years. [FN12]

> FN12. The defendants do not contest the $75 hourly rate charged for legal assistant Cindy Gamarra, and the Court concludes that this rate is reasonable.

[61] Finally, the defendants also maintain that the plaintiff's attorneys are seeking a double recovery by pursuing attorneys' fees and costs under § 1988 because they are entitled to roughly $60,000 as a result of their contingency fee arrangement with the plaintiff. It is clear that "[s]hould a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount" and that "[t]he attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable under § 1988." *Blanchard v. Bergeron,* 489 U.S. 87, 93, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Accordingly, this Court rejects defendants' contention that Sabir cannot recover attorneys' fees because his attorneys will be compensated pursuant to a contingent fee arrangement. Moreover, the plaintiff's attorneys have represented that should the Court award fees in excess of one-third of *252 the plaintiff's damages, they will accept the court-awarded fees rather than take anything from the plaintiff's damages award. Thus, the Court may award attorneys' fees in this case, regardless of the private fee arrangement between Sabir and his attorneys, though the existence of a contingent fee arrangement is one factor that it may consider when fashioning a fee award. *See Orchano,* 107 F.3d at 97. [FN13]

> FN13. The Court notes that the plaintiff also is entitled to attorneys' fees and costs as a result of the jury's decision to award punitive damages for intentional infliction of emotional distress. The defendants have not contested this issue.

Considering all of the relevant factors set forth above, the Court awards attorney's fees in the amount of $217,002.37 and costs in the amount of $8016.25. [FN14]

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

214 F.Supp.2d 226 Page 22
214 F.Supp.2d 226
**(Cite as: 214 F.Supp.2d 226)**

       FN14. The defendants did not dispute the costs calculated by the plaintiff.

VI. *Conclusion*

Based on the foregoing, Defendants' Motion for New Trial and/or Remittitur [Doc. 176-1, 176-2] is DENIED; Defendants' Motion for Judgment After Trial [Doc. # 178] is DENIED; Plaintiff's Motion for Attorneys' Fees [Doc. # 170] is GRANTED, AS MODIFIED; Plaintiff's Supplemental Motion for Attorneys' Fees [Doc. # 193] is GRANTED, AS MODIFIED; and Plaintiff's Second Supplemental Motion for Attorneys' Fees [Doc. # 200] is GRANTED, AS MODIFIED.

214 F.Supp.2d 226

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.