Westlaw.

31 Fed.Appx. 21
31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))
**(Cite as: 31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.)))**

Page 1

**H**
This case was not selected for publication in the Federal Reporter.

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Second Circuit Rules § 0.23. (FIND CTA2 s 0.23.)

United States Court of Appeals,
Second Circuit.

UNITED STATES of America, Appellee,
v.
Baldassare AMATO; Kevin Antinuche; Massimo Buscemi; Salvatore Chiaramonte; Giovanni D'Aleo; Joseph D'Aleo; Riccardo Fenoaltea; Filippo Fiordilino; Tudor Moga; Vincent Morena; Joseph O'Kane; Salvatore Pugliese; Vincenzo Anthony Sciacca; Florian Stoica; Brian Turk, Defendants,
Frank GUIDICE, Robert Iacobelli, also known as Yak, Zaim Kolar, also known as Zahir, Defendants-Appellants.

Docket No. 01-1046.

March 7, 2002.

Defendants were convicted int he United States District Court for the Eastern District of New York, Johnson, J., after a jury trial, of armed robbery conspiracy, in violation of Hobbs Act, and defendants appealed. The Court of Appeals held that: (1) defendants waived arguments that testimony by government's cooperative witness was irrelevant and prejudicial; (2) admission of other crimes evidence was not reversible error; (3) evidence was sufficient to support finding that planned robbery would have an effect on interstate commerce, as required to fulfill jurisdictional element of Hobbs Act.

Affirmed.

West Headnotes
**[1] Criminal Law** ☞1036.1(3.1)
110k1036.1(3.1) Most Cited Cases
Defendants waived arguments that testimony by government's cooperative witness in armed robbery conspiracy trial was irrelevant and prejudicial, depriving defendants of fair trial, where defendants failed to object during trial that the evidence was irrelevant or unduly prejudicial; witness testified, sometimes graphically, regarding his criminal background and organized crime connections. 18 U.S.C.A. § 1951; Fed.Rules Evid.Rules 401, 403, 28 U.S.C.A.

**[2] Criminal Law** ☞1169.11
110k1169.11 Most Cited Cases
Admission of evidence of uncharged acts allegedly committed by defendants, convicted of armed robbery conspiracy, and others prior to the commission of the armed robbery was not reversible error, although prosecutor assured district court that the vast majority of the evidence would involve crimes no more inflammatory than the charged armed robbery conspiracy and the testimony was plainly and significantly more inflammatory; defendants failed to object to the evidence and jury received cautionary instruction that it was only to consider the conspiracy and robbery charges against defendants. 18 U.S.C.A. § 1951; Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[3] Witnesses** ☞318
410k318 Most Cited Cases
The government is allowed to bring out on direct examination information that is damaging to its witness's credibility; this is to prevent the defense

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

31 Fed.Appx. 21  
31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))  
**(Cite as: 31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.)))**

Page 2

from creating the misleading impression, or the jurors from thinking, that the government was concealing relevant facts from the jury.

**[4] Criminal Law ⚖369.2(6)**
110k369.2(6) Most Cited Cases

**[4] Witnesses ⚖414(1)**
410k414(1) Most Cited Cases
Admission of evidence of defendants' other crimes and ties to organized crime in defendants' trial on armed robbery conspiracy and related charges was not in error, under abuse of discretion standard; evidence of pre-existing relationships with crime family arguably helped explain how defendant came to participate and lead robbery plan and arguably corroborated witness's testimony that he initially lied to federal agents for fear of his safety. 18 U.S.C.A. § 1951; Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[5] Criminal Law ⚖1169.11**
110k1169.11 Most Cited Cases
Even if admission of testimony regarding defendants' ties to organized crime was in error, the error was harmless in trial of defendants convicted of armed robbery conspiracy and related charges; the evidence came mostly from direct participants in the alleged conspiracy, who were cooperating witnesses. 18 U.S.C.A. § 1951; Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[6] Conspiracy ⚖47(11)**
91k47(11) Most Cited Cases
Evidence was sufficient to support jury's finding that planned robbery, underlying defendants' armed robbery conspiracy convictions, had an interstate nexus, satisfying jurisdictional element of Hobbs Act; although fictitious diamond business that defendants planned to rob did not exist, a tool business, which actually existed and operated at the location of the putative diamond business, did engage in interstate commerce, and defendants targeted the business owners' home because defendants believed cash from the business was kept there. 18 U.S.C.A. § 1951.

*23 Vivian Shevitz, South Salem, NY, for Appellant Guidice.

Jane Simkin Smith (Vincent J. Ancona, on the brief), New York, NY, for Appellant Iacobelli.

Julius Wasserstein, New York, New York, for Appellant Kolar.

Lauren Resnick, Assistant United States Attorney, Eastern District of New York (Jo Ann M. Navickas, Assistant United States Attorney, Eastern District of New York, on the brief) for Alan Vinegard, United States Attorney, Eastern District of New York, for Appellee.

Present SACK, KATZMANN and B.D. PARKER, Circuit Judges.

Summary Order

**1 UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York (Johnson, J.), it is hereby

ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Defendants Frank Guidice, Robert Iacobelli, and Zaim Kolar appeal from judgments entered in the United States District Court for the Eastern District of New York (Johnson, J.), convicting them, after a jury trial, of armed robbery conspiracy in violation of 18 U.S.C. § 1951. Guidice also appeals his conviction for attempted armed robbery, in violation of 18 U.S.C. § 1951, and a related gun charge, in violation of 18 U.S.C. § 924(c). Moreover, Guidice and Iacobelli appeal their sentences.

The convictions stem from a plot and several botched attempts to break into the home of Zinovy and Raisa Markovich in Brooklyn, New York. The parties' familiarity with the facts of this case is assumed.

[1] The defendants argue that the district court erred in allowing the government to introduce "an excess of highly inflammatory evidence about the Mafia" at trial. The defendants claim that this evidence, which was introduced in large part through Anthony Tabbita, one of the government's cooperating witnesses, was irrelevant, prejudicial, and deprived the defendants of a fair trial. It is true that, before the government asked Tabbita about the specific charges in this case, Tabbita gave lengthy testimony on direct examination, filling more than 100 pages of trial transcript, about his criminal background and organized crime connections and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

31 Fed.Appx. 21 Page 3
31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))
**(Cite as: 31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.)))**

that this *24 testimony was graphic at times. *See Transcript of Trial* at 424-541. [FN1] While we appreciate that some of the testimony appears to be excessive, the record indicates that defense counsel actually welcomed this testimony. Defense counsel did not object to the testimony on the grounds that it was unduly prejudicial; the only objections by defense counsel during this portion of Tabbita's testimony were to form, as well as one 404(b) objection by Guidice's attorney when Tabbita was asked whether Guidice became a member of an organized crime family. *Tr.* at 431, 443, 503-05, 507, 518, 519, 521. In fact, the record reveals that defense counsel spent a considerable amount of time on cross-examination eliciting more testimony from Tabbita about his criminal background and organized crime associations. *Tr.* at 609-725, 750-94, 798-800, 809-29. [FN2] The fact that defense counsel welcomed this testimony was apparent when Guidice's trial attorney told the judge "I'm very displeased with the fact that people are walking in and out while [Tabbita]'s testifying about vicious crimes that are committed because it's taking the jurors' attention away from what the witness is saying." *Tr.* at 512. It seems safe to assume that defense counsel welcomed all the details of Tabbita's criminal activities in the hope that the jurors would find Tabbita so repugnant that they would discredit his later testimony, which implicated Guidice, Iacobelli, and Kolar in the charged conspiracy. *Tr.* at 541-56, 563-571. Because the defendants did not object to Tabbita's testimony as unduly prejudicial or irrelevant during trial, they waived the arguments they now raise under Rules 401 and 403. *See United States v. Coonan,* 938 F.2d 1553, 1561 (2d Cir.1991) (concluding that counsel waived appellate review of his claim that the trial judge erred in permitting evidence of gang's criminal activities, including gruesome murders, as defense counsel repeatedly failed to object to such testimony and the defendant actually welcomed the gruesome evidence at times), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *United States v. Del Purgatorio,* 411 F.2d 84, 86 (2d Cir.1969) (noting that appellant was precluded from raising an objection to testimony on appeal given that he made no objection at trial). Defense counsel in the instant case made a tactical decision at trial and the defendants cannot now evade that tactical decision by objecting to evidence they failed to object to and actually welcomed during the trial. *See Coonan,* 938 F.2d at 1561.

> FN1. It is also true that this testimony made one juror nervous enough to ask to be excused, which he was, and another juror to express concern to the judge.

> FN2. For example, during cross-examination Guidice's attorney asked Tabbita: "You and Frank [Guidice] are associated with the Gambino crime family, right?" *Tr.* at 794. Iacobelli's attorney asked Tabbita to explain the hierarchy in the Gambino family. *Tr.* at 798-99.

**2 [2] To be sure, the Assistant United States Attorney prosecuting this case wrote a letter to the district court "in support of the admission, pursuant to Rule 404(b) of the Federal Rules of Evidence, of uncharged acts committed by the defendants and others prior to the commission of that offense." The AUSA assured the court that "[t]he vast majority of the [evidence of] uncharged conduct [will] involve[ ] crimes that are no more inflammatory than the charged offense." That was not so--the litany of lurid crimes about which Tabbita testified were plainly and significantly more inflammatory than the crimes of which the defendants were accused. It is difficult, moreover, not to *25 think that the AUSA appreciated the inflammatory nature of the evidence at the time she made this representation to the court. While we certainly do not condone this conduct if the AUSA were so aware, in light of defense counsel's failure to object, indeed its apparent embrace of the testimony as helpful to the defense, we conclude that it did not lead the district court into reversible error.

[3] Moreover, the government is allowed to bring out on direct examination information that is damaging to its witness's credibility. *See United States v. Cosentino,* 844 F.2d 30, 33 (2d Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *United States v. Singh,* 628 F.2d 758, 761 (2d Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980); *Del Purgatorio,* 411 F.2d at 87. This is to prevent the defense from creating the misleading impression, or the jurors from thinking, that the government was concealing relevant facts from the jury. *See Cosentino,* 844

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

31 Fed.Appx. 21  
31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))  
**(Cite as: 31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.)))**

Page 4

F.2d at 33; *Del Purgatorio,* 411 F.2d at 87. The trial judge provided the requisite cautionary instruction to the jury, *see id.,* by explaining that despite the testimony of other crimes, the only charges against the defendants were for conspiracy and attempt to commit robbery and the jury was to consider only these charges. *Tr.* at 1466. The court also advised the jury, as part of its jury instructions, that "you may not infer that a defendant was guilty of participating in criminal conduct merely from the fact that he or she associated with other people who were guilty of wrongdoing or was present at the time the crime was being committed and had knowledge that it was being committed." *Tr.* at 1971.

[4] We also find that the district court did not err in admitting evidence of the defendants' "other crimes" and ties to organized crime under Rule 404(b). The Second Circuit has held that prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed. *See United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992) (holding that district court did not err in determining that evidence of prior narcotics transactions was relevant in informing the jury of the background of the conspiracy charged, in that such evidence could help explain to the jury the relationship between the participants); *United States v. Rosa,* 11 F.3d 315, 334 (2d Cir.1993) ("it is within the trial court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators."), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994) ; *United States v. Langford,* 990 F.2d 65, 70 (2d Cir.1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history.").

**\*\*3** The district court committed no error in admitting evidence of Guidice's pre-existing relationship with members of the Gambino family because it arguably helped explain how Guidice came to participate and ultimately lead the robbery plan and why Guidice confided the details of the robbery to Tabbita after the March 1997 robbery attempt. Evidence that Guidice was a member of the Gambino family also arguably helped to corroborate Stoica's testimony that he initially lied to federal agents **\*26** about Guidice's involvement because he feared for his safety. Evidence of Iacobelli's relationship with Tabbita also helped explain why Iacobelli would bring the robbery to Tabbita and why Iacobelli would participate in the robbery. Given the abuse of discretion standard we must apply when reviewing a district court's evidentiary rulings, we do not find the inclusion of this "other crimes" evidence to be error. *See United States v. Brady,* 26 F.3d 282, 286 (2d Cir.), *cert. denied,* 513 U.S. 894, 115 S.Ct. 246, 130 L.Ed.2d 168 (1994).

[5] Furthermore, even if we were inclined to find that the court erred in allowing the amount of organized crime testimony that was introduced at trial or in admitting certain evidence pursuant to 404(b), given the strength of the evidence against Guidice, Iacobelli and Kolar, which came mostly from direct participants who were cooperating witnesses, these errors would nevertheless be harmless. *See United States v. Lyles,* 593 F.2d 182, 196 (2d Cir.) (finding that reversal of defendant's conviction was not warranted given strong case against him despite court's finding that district judge abused his discretion in evaluating evidence under Rule 403), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

[6] The defendants also challenge their convictions on the basis that the government failed to satisfy the jurisdictional element of the Hobbs Act, 18 U.S.C. § 1951. According to the defendants, the government presented no evidence that the defendants planned to commit a crime that, if successful, would have violated federal law or any evidence of a potential effect on interstate commerce.

In order to find that the jurisdictional element of the Hobbs Act was satisfied in this case, we must determine whether the conspiracy was one to commit a crime that is prohibited by federal law. *See United States v. Jannotti,* 673 F.2d 578, 592 (3d Cir.) ("The appropriate inquiry then is ...

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

31 Fed.Appx. 21                                                                                                          Page 5
31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))
**(Cite as: 31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.)))**

whether the defendants' conduct constituted a sufficient threat to interstate commerce so as to implicate an 'area of federal concern' sufficient to give rise to federal jurisdiction."), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *cf. United States v. Feola,* 420 U.S. 671, 695, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) ("Where ... there is an unfulfilled agreement to assault, it must be established whether the agreement, standing alone, constituted a sufficient threat to the safety of a federal officer so as to give rise to federal jurisdiction.").

The evidence at trial sufficed to establish that at least three of the coconspirators, Iacobelli, Tabbita, and LaRussa, believed the residents of the targeted home were diamond merchants and kept at least $1 million in cash, and possibly diamonds, in the home. *Tr.* at 542, 951, 1005, 1116. Although there was no direct evidence that defendants Kolar and Guidice also believed the residents to be diamond merchants, common sense would suggest, and a jury could reasonably find, that Tabbita would share the basis for his belief that there was over $1 million in cash in the home with those he was trying to recruit for the robbery. It also seems reasonable to infer that when Iacobelli and LaRussa asked Guidice if he would be interested in taking over the robbery, after Tabbita decided he no longer wanted to participate, they would have informed Guidice of the same details they had originally provided to Tabbita (i.e., that the residents were diamond merchants and kept at least $1 million in cash in the house).

**\*4** Even assuming that Guidice and Kolar had no knowledge that the residents of the home were supposedly diamond merchants, this would not insulate them from \*27 being convicted under the Hobbs Act. In *United States v. Rosa,* 17 F.3d 1531 (2d Cir.), *cert. denied,* 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994), the Second Circuit concluded that the jurisdictional nexus could be "satisfied by the belief of at least one conspirator that the goods had traveled interstate" and therefore determined that "we need not explore the evidence of the other defendants' awareness that their crime was federal." *Id.* at 1546; *see also Feola,* 420 U.S. at 692, 95 S.Ct. 1255 ("[I]t is clear that one may be guilty as a conspirator for acts the precise details of which one does not know at the time of agreement."). Although *Rosa* involved a conspiracy to receive stolen goods, and not a Hobbs Act violation, one of the issues before the court was what facts would suffice to satisfy the federal jurisdictional nexus ("interstate travel") when the charge is conspiracy rather than the substantive offense. *Id.* at 1544. The court concluded that the jurisdictional nexus was satisfied either by proof that the goods had in fact traveled interstate (thus rendering the defendants' belief or knowledge regarding interstate travel irrelevant for jurisdictional purposes) or that at least one of the coconspirators believed that the goods had traveled interstate. *Id.* at 1546. Thus, under *Rosa,* we may impute to Guidice and Iacobelli the belief that the residents kept proceeds and valuables from their business in their home. This would be a different case if the defendants had no knowledge that business proceeds were kept in the home, and planned to rob the home for appliances, jewelry, cash, and other valuable personal items. However, those are not the facts of this case; rather, the facts here indicate that the defendants targeted the home because they believed the residents kept a substantial amount of cash from their business in the home.

We further find that the government presented sufficient evidence from which a jury could find a potential effect on interstate commerce had the defendants succeeded in robbing the Markovich's business proceeds. *See United States v. Shareef,* 190 F.3d 71, 75 (2d Cir.1999) (explaining that a potential or subtle effect on interstate commerce is sufficient to sustain a Hobbs Act violation); *Jannotti,* 673 F.2d at 592 (stating that where "defendants agreed to do acts which, had they been attainable, would have affected commerce," a sufficient federal interest was implicated to support federal jurisdiction); *United States v. Augello,* 451 F.2d 1167, 1170 (2d Cir.1971) (noting that depletion of the business's resources could "impair the efficient conduct of its business sufficiently to affect commerce"), *cert. denied,* 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972). The government concedes that it did not provide evidence at trial that the fictitious diamond business had an effect on interstate commerce. Instead, it offered evidence that the Markovich's tool business, which actually did exist, was engaged in interstate commerce. This was appropriate as the evidence at

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

31 Fed.Appx. 21
31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))
**(Cite as: 31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.)))**

Page 6

trial established that the residents had been in the habit of keeping business proceeds at their home overnight and that Mrs. Markovich typically deposited the money in the bank the next morning. *Tr.* at 402, 1142-47. The evidence, including invoices, established that the tool business purchased goods from vendors in other states. Based on this evidence, the jury could have reasonably found a potential effect on interstate commerce had the robbery been successful.

**\*\*5** Therefore, contrary to the defendants' arguments, we conclude that the government introduced sufficient evidence of an interstate nexus in this case to satisfy the jurisdictional element required in a Hobbs Act violation and to support the defendants' convictions.

**\*28** We have considered all of the appellants' other arguments. We affirm the judgment of the district court.

31 Fed.Appx. 21, 2002 WL 360735 (2nd Cir.(N.Y.))

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.